Ralph L. WILLIAMS, Plaintiff,

v.

INTERNATIONAL TYPOGRAPHICAL UNION, AFL–CIO, and Denver Typographical Union, a local union of the International Typographical Union–AFL–CIO, Defendants.

Civ. A. No. 67–C–334.

United States District Court
D. Colorado.

Jan. 9, 1969.

Milnor H. Senior, Denver, Colo., for plaintiff.

Jack Henderson, Denver, Colo., for defendants.

### MEMORANDUM OPINION AND ORDER

CHILSON, District Judge.

By this action, plaintiff, a member of the defendant unions, seeks redress for alleged invasions by the defendants of the rights guaranteed to him by 29 U.S.C.A. § 411,[1] the Bill of Rights pro-

---

1. Subchapter II.—Bill of Rights of Members of Labor Organizations.

§ 411. Bill of rights; constitution and bylaws of labor organizations.

(a) (1) *Equal rights.*—Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

(2) *Freedom of speech and assembly.* —Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

(3) *Dues, initiation fees, and assessments.*—Except in the case of a federation of national or international labor organizations, the rates of dues and initiation fees payable by members of any labor organization in effect on September 14, 1959 shall not be increased, and no general or special assessment shall be levied upon such members, except—

(A) in the case of a local labor organization, (i) by majority vote by secret ballot of the members in good standing voting at a general or special membership meeting, after reasonable notice of the intention to vote upon such question, or (ii) by majority vote of the members in good standing voting in a membership referendum conducted by secret ballot; or

(B) in the case of a labor organization, other than a local labor organization or a federation of national or international labor organizations, (i) by majority vote of the delegates voting at a regular convention, or at a special convention of such labor organization held upon not less than thirty days' written notice to the principal office of each local or constituent labor organization entitled to such notice, or (ii) by majority vote of the members in good standing of such labor organization voting in a membership referendum conducted by secret ballot, or (iii) by majority vote of the members of the executive board or similar governing body of such labor organization, pursuant to express authority contained in the constitution and bylaws of such labor organization: *Provided,* That such action on the part of the executive board or similar governing body shall be effective only until the next regular convention of such labor organization.

(4) *Protection of the right to sue.*—No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding, or the right of any member

visions of the Labor-Management Reporting and Disclosure Act.

The matter came on for trial before the Court on January 6, 1969.

The facts essential to a disposition of this action are not in conflict. Since 1917, the plaintiff has, from time to time, been employed as a printer and has been a member of printer's unions. Since November 1963, the plaintiff has been a member of the defendant, Denver Typographical Union (local union) which was then and now is a union "chartered by, subordinate to, and working under the jurisdiction * * * " of the defendant, International Typographical Union (International Union) see Exhibit 2, page 3.

The Constitutions of both the local and international unions provide for several classes of membership. Two of these classifications are here involved and are commonly referred to as those members "working at the trade" and those "not-at-trade" (N.A.T.).

Since 1962, the plaintiff has had full-time employment as a technical writer with the Bureau of Reclamation of the Federal Government, and since 1963, has also worked as a printer at nights and at other times when his employment with the Bureau of Reclamation permitted.

During a portion of the year 1964, and prior thereto, plaintiff was classified by the union as a member "working at the trade"; but on or about March 1965, because of his full-time employment by the Bureau of Reclamation, plaintiff was classified as a member "not-at-trade".

As a result of this classification, the plaintiff lost all rights to priority (seniority) of employment, as under the union rules, only members classified as "working at the trade" have priority rights. Consequently, plaintiff could be and can be employed only after the employment of all those classified as "working at the trade". The lack of priority has an adverse effect upon the amount of employment the plaintiff can obtain.

In addition, the plaintiff was and is required by the defendant unions, because of his classification of "not-at-trade", to pay two assessments for the old-age pension and mortuary funds of the union; one upon his total earnings as a printer and the other computed upon "the maximum scale (for day work) of the union * * * ". This maximum scale is the amount computed by the union that a member "working at the trade" would earn during a certain period if he devoted his full time to the occupation of a printer.

One classified as "working-at-trade" is required to pay an assessment only on his total earnings as a printer irrespective of whether or not he earned the "maximum scale".

The plaintiff contested both his classification and the two assessments and in doing so he exhausted the internal union remedies available to him. Being unsuccessful, the plaintiff instituted this

of a labor organization to appear as a witness in any judicial, administrative, or legislative proceeding, or to petition any legislature or to communicate with any legislator: *Provided*, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof: *And provided further*, That no interested employer or employer association shall directly or indirectly finance, encourage, or participate in, except as a party, any such action, proceeding, appearance, or petition.

(5) *Safeguards against improper disciplinary action.*—No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

(b) Any provision of the constitution and bylaws of any labor organization which is inconsistent with the provisions of this section shall be of no force or effect. Pub.L. 86–257, Title 1, § 101, Sept. 14, 1959, 73 Stat. 522.

action pursuant to 29 U.S.C.A. § 412, and alleges that the defendants by the classification and the two assessments have violated the rights granted to him by 29 U.S.C.A. § 411(a) (1), (2), (3), and (5).

We first consider the classification. Article IX Section 1 of the International Constitution (Exhibit 1) was adopted in 1927 and became effective in 1928. After providing for a per capita tax of one dollar per month per member, Section 1 provides in part:

"An additional assessment for the old age pension and mortuary funds according to the following classifications:

"(a) Active members (including members working at the trade and seeking work at the trade)—Two and one-half per cent upon total earnings.

"(b) Active members not working at the printing trade (members whose cards are deposited with a subordinate union who follow other pursuits, and members not seeking work at the printing trade)—Two and one-half per cent upon the maximum scale (for day work) of the union with which member is affiliated."

In the constitutions of both the international and the local unions, the local unions are referred to as "subordinate unions" and it is clear that the reference to "a subordinate union" in subsection (b) means the defendant local union and other local unions of the International. Plaintiff has testified that he has deposited his cards with the defendant local union and that he has full-time employment at a trade other than the printers trade.

█ It is not the province of this Court to determine the wisdom of these membership classifications which the unions have established. It is only for this Court to determine whether or not the union's classification of members into "working at the trade" and "not-at-trade" violates the Bill of Rights contained in Section 411. We have been cited to no case law, and we have found none, which questions the right of the union to provide for more than one class or category of members. The purpose of the classifications here involved is to give employment preference to those members who do not follow other pursuits. In the opinion of the Court, the classifications here involved are not unlawful, nor do they violate any rights granted to the plaintiff by Section 411. In the circumstances of this case, the classification of plaintiff as a member "not-at-trade" was reasonable and was not arbitrary or capricious and was not violative of plaintiff's rights under Section 411.

We next consider the plaintiff's complaint that the assessments upon him pursuant to both subsections (a) and (b) of Section 1 of Article IX of the International Constitution violate the rights granted to him by Section 411.

We find nothing in the International Constitution which authorizes assessment under subsection (a) of members classified as "not-at-trade". The defendants justify the assessment under subsection (a) by an "interpretation" of Article IX adopted by the Executive Council of the International Union on January 10, 1945, which states:

"Members regularly employed at other occupations who accept employment at the printing trade are required to pay the assessments upon earnings at the printing trade in addition to assessments required of members classified as 'N.A.T.' "

Although the Executive Council is given authority by Section 8 of Article X of the International Bylaws to "interpret and construe the laws * * *" of the International Union, it is doubtful that the language of Section 1 of Article IX permitted such an interpretation, and if such interpretation had been made after the effective date of Section 411 (a) (3) (September 14, 1959) the validity of assessing members "not-at-trade" under subsection (a) would be questionable to say the least.

█ However, more than fourteen years elapsed between the interpretation

and the effective date of Section 411 (a) (3). In the absence of evidence to the contrary, the Court infers that the membership by its failure to take action to disavow this interpretation, accepted it as a part of the dues and assessment provisions of the unions. In the circumstances of this case, the Court concludes that on September 14, 1959, the interpretation of January 10, 1945, was a part of the "rates of dues", and the assessment of the plaintiff as a "not-at-trade" member under both subsections (a) and (b) of Section 1 of Article IX of the International Constitution did not constitute an increase in the rates of dues over those in effect on September 14, 1959. The assessment of plaintiff under both subsections (a) and (b) was not a violation of the plaintiff's rights under Section 411 (a) (3).

The unions' classification of plaintiff and the two assessments levied on plaintiff under subsections (a) and (b) did not violate or invade any rights granted to the plaintiff by Section 411 (a) (1) and (2) and there is no evidence of other acts constituting a violation thereof.

The plaintiff also contends that, in classifying the plaintiff as "not-at-trade" and in making assessments upon him under both subsections (a) and (b), the defendants were conducting disciplinary proceedings against the plaintiff without complying with the requirements of Section 411 (a) (5). Although it is apparent that the plaintiff and the union have been engaged in controversy for some considerable period of time, there is no evidence to justify this conclusion. The basis for the assessments goes back to 1945 when the Executive Council of the International made its interpretation of the assessment of members "not-at-trade". The definition of a member "not-at-trade" which was applied to plaintiff was contained in the International Constitution adopted in 1927. The fact that there may be ill will between the parties, in the circumstances of this case, does not convert the legal acts of the union in classifying and assessing the plaintiff into a disciplinary proceeding requiring compliance with the procedures in Section 411 (a) (5). The Court concludes that the plaintiff's rights under said section have not been violated by defendants.

The Court finds the issues herein for the defendants and against the plaintiff and determines that judgment of dismissal of the plaintiff's complaint should be entered and that the defendants are entitled to judgment for their costs.

It is therefore ordered that judgment of dismissal of the plaintiff's complaint be entered, and that the defendants have judgment for their costs to be taxed by the Clerk of the Court upon the filing of a bill of costs.