423 F.2d 1295
 Ralph L. WILLIAMS, Plaintiff-Appellant,
v.
INTERNATIONAL TYPOGRAPHICAL UNION, AFL-CIO, and Denver Typographical Union, a local union of the International Typographical Union — AFL-CIO, Defendants-Appellees.
 No. 229-69.
 United States Court of Appeals, Tenth Circuit.
 March 19, 1970.
 
 Milnor H. Senior, Denver, Colo., for appellant.
 Jack D. Henderson, of Robinson & Henderson, Denver, Colo., for appellees.
 Before BREITENSTEIN and HOLLOWAY, Circuit Judges, and CHRISTENSEN, District Judge.
 BREITENSTEIN, Circuit Judge.
 
 
 1
 The plaintiff-appellant claims that he has been denied rights guaranteed to members of labor organizations by Section 101 of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 411. Jurisdiction lies under 29 U.S.C. § 412. The district court held in favor of the Unions and dismissed the action. Williams v. International Typographical Union, D.C.Colo., 293 F.Supp. 1346. The plaintiff's basic complaint is that the 1965 change in his membership classification deprived him of rights guaranteed by the Act.
 
 
 2
 Plaintiff has worked at the printing trade intermittently since 1917. At pertinent times, his employment as a printer was with one of Denver's daily newspapers. His present affiliation with the International Union dates from 1959 and with the Local Union from 1963. Since April, 1961, plaintiff has held a full-time job with the United States Bureau of Reclamation as a technical writer. In the vernacular, he has also been moonlighting as a printer.
 
 
 3
 The constitution and laws of the Unions recognize membership classifications which include "working at the trade" and "not working at the trade." Plaintiff was classified as "working at the trade" until March, 1965, when the Unions became aware of his full-time job with the United States. His classification was then changed to "not working at the trade." The change affected his union assessments, his voting rights, and his priority. Plaintiff appealed this action to the International Convention, which denied his claims. It is stipulated that he has exhausted his union remedies.
 
 
 4
 The main thrust of plaintiff's argument is that the reclassification was disciplinary action within the meaning of the Act. Section 411(a) (5) provides that no union member "may be fined, suspended, expelled, or otherwise disciplined" unless he has notice of the charges, time to prepare a defense, and a full and fair hearing.
 
 
 5
 The rights granted by the Act are specific. We believe that Congress did not intend that the Act be an invitation to the courts to intervene at will in the internal affairs of unions and that "[g]eneral supervision of unions by the courts would not contribute to the betterment of unions or their members or to the cause of labor-management relations." Gurton v. Arons, 2 Cir., 339 F. 2d 371, 375. See also Schuchardt v. Millwrights & Machinery Erectors Local Union No. 2834, 10 Cir., 380 F.2d 795.
 
 
 6
 The question is whether the re-classification is discipline. In our opinion the provision requiring the classification of those with other full-time employment as "not at the trade" is a reasonable one. In New York Typographical Union Number Six, 144 NLRB 1555, 1558, petition to review denied, Cafero v. National Labor Relations Board, 2 Cir., 336 F.2d 115, the National Labor Relations Board considered an unfair labor practice charge against the unions based on the reclassification of a member as "not at the trade." The Board said that the action taken by the unions was "for the legitimate purpose of attempting to give the work of the trade to those who presumably needed it, rather than to those who held full-time positions elsewhere."
 
 
 7
 We agree with the Board's characterization of the purposes underlying the classification scheme. Thus, the case at bar is not like Detroy v. American Guild of Variety Artists, 2 Cir., 286 F.2d 75, cert. denied 366 U.S. 929, 81 S.Ct. 1650, 6 L.Ed.2d 388. There the court held that the blacklisting of a union member was discipline requiring compliance with § 411(a) (5). The curtailment of an individual's employment opportunities to the benefit of others economically more dependent on the printing trade, as was done by the Unions here, is not to be compared with the extreme effects of black-listing.
 
 
 8
 The classification regulation was fairly applied to plaintiff. No showing is made of any improper motivation, of any discrimination, or of any intent to punish the plaintiff by depriving him of privileges. The Unions simply enforced their rule pertaining to members having full-time employment outside the printing trade.
 
 
 9
 It is of some importance that plaintiff readily admitted his government employment prior to his reclassification and has done so ever since. The admission precipitated the reclassification. In Figueroa v. National Maritime Union of America, 2 Cir., 342 F.2d 400, union members who admitted narcotics convictions claimed that they were disciplined when the union, acting in accordance with the collective bargaining agreement and the declared policy of the shippers not to hire any narcotics violators, refused to refer them for employment with the shippers. The court disagreed, saying that the members' self-admitted disqualification kept the action from being discipline. Had they contested the fact of conviction, the court said they would have been entitled to the procedural safeguards of § 411(a) (5).
 
 
 10
 The concurrence of the above circumstances — the regulation's reasonableness, its fair application, and plaintiff's admitted outside employment — convinces us that the reclassification did not amount to discipline. In this situation, the procedural safeguards would be of no help to plaintiff. If he were given a hearing, he would be unable to show that the regulation did not apply to him, and, in light of the union's initial decision to reclassify him and our conclusion that the scheme is reasonable, it can hardly be urged that he could successfully assert that for some reason it should not be applied to him. We also note that he did press the latter point, unsuccessfully, in his appeal to the International Convention. Because we cannot attribute to Congress an intention to provide procedural safeguards where there is nothing to safeguard, we conclude that where a reasonable regulation is applied in a fair and just manner to one who, by self-admission, is covered by it, such application does not come within the statutory phrase "otherwise disciplined."
 
 
 11
 Plaintiff says that, in violation of § 411(a) (1), the Unions have wrongfully denied him the right to vote on wage scales. That section provides that every union member shall have equal rights to participate in and vote at membership meetings "subject to reasonable rules and regulations in such organization's constitution and bylaws." We assume that the right to vote includes the right to vote on wage scales. This right may be restricted by reasonable rules and regulations. See Calhoon v. Harvey, 379 U.S. 134, 138-139, 85 S.Ct. 292, 13 L.Ed. 2d 190, and Navarro v. Gannon, 2 Cir., 385 F.2d 512, 519, cert. denied 390 U.S. 989, 88 S.Ct. 1184, 19 L.Ed.2d 1294. The question is the reasonableness of the International's regulation prohibiting a member classified as "not at the trade" from voting on wage scales. The evidence for the Unions was that those not primarily dependent on the printing business for their livelihood, a characteristic found in the not-at-the-trade classification, do not have the vital interest in wage scales which is present in those who are first and foremost printers. We believe that the regulation is reasonable and does not violate the Act. Cf. Allen v. International Alliance etc., 5 Cir., 338 F.2d 309, 319.
 
 
 12
 The reclassification also resulted in plaintiff's loss of priority to the detriment of his employment opportunities. The Act does not explicitly create an equal right to priority and such right, by its very nature, cannot be inferred. The creation and operation of priority rights are within the expertise of labor organizations. Here, the loss of priority was because of a reasonable regulation which was fairly enforced. The union action did not deprive plaintiff of any right guaranteed by the Act.
 
 
 13
 Loss of priority also meant that plaintiff was no longer entitled to membership and voting rights in his local chapel. The chapel is a subdivision of the Local Union and is found in each business which has a contract with the Local. Section 402(i) defines a labor organization as one "which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment, * * *." These functions are performed by the Local, not by the chapels. They appear to exist mainly to collect dues and keep earning records, for the benefit of the Local. In our opinion, a chapel is not a labor organization within the meaning of the Act and the deprivation of rights which pertain thereto does not violate the Act.
 
 
 14
 Section 411(a) (3) provides that dues shall not be increased and assessments shall not be levied except by vote of the members. Plaintiff says that the assessments against him as a not-at-the-trade member violate that section. The constitution of the International provides that those classified as working at the trade shall pay 2½% of their total earnings as contributions to the old age and mortuary funds. Members not working at the trade are assessed 2½% of the maximum wage scales for those funds. In 1945 the Executive Council, which has authority to "interpret and construe" the laws of the International, ruled that those not at the trade had to pay both on their earnings and on the maximum wage scale.
 
 
 15
 Plaintiff urges that the ruling of the Executive Council was an amendment of the union constitution rather than an interpretation. We are not concerned with whether the Executive Council exceeded its authority but only with whether the ruling violates the Act. See Gurton v. Arons, 2 Cir., 339 F.2d 371, 374. We agree with the trial court that the requirements of § 411(a) (3) are applicable only to dues increases and assesments made after the effective date of the Act, September 14, 1959. Plaintiff complains about rates of assessment which have been effective since 1945. The fact that his individual rates have been increased since 1959 is immaterial. Section 411(a) (3) does not apply to individual increases resulting from a change in classification. The argument that a member may not be treated for the purposes of the assessments as both at trade and not at trade is unpersuasive. Nothing in the Act forbids such union action.
 
 
 16
 The claim that plaintiff was denied rights to freedom of speech and assembly secured by § 411(a) (2) is not sustained by the record. A union official testified that plaintiff participated in chapel meetings and expressed his point of view. We find no evidence to the contrary.
 
 
 17
 Affirmed.