James G. **KELLY** and Edward Struckman, **Plaintiffs,**

v.

Carl **GIBBS** et al., **Defendants.**

No. 70 C 221(A).

United States District Court,
E. D. Missouri, E. D.

June 26, 1972.

Harold Gruenberg, Gruenberg & Souders, St. Louis, Mo., for plaintiffs.

Mortimer A. Rosecan, St. Louis, Mo., for defendants Gibbs, Shackles and Sleme.

Harry H. Craig, St. Louis, Mo., for defendants Dorsey, Vossmeyer and Horn.

## MEMORANDUM OPINION

HARPER, District Judge.

Plaintiffs, members of the Automotive, Petroleum and Allied Industries Employees Union No. 618, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (hereinafter referred to as Local 618), brought suit against the members of the Executive Board of Local 618, complaining that they were discriminated against because they supported candidates in opposition to the recommended slate at an election of officers in Local 618 in December, 1969.

Specifically, plaintiff Kelly complains that he was removed as trustee of the Health and Welfare Trust Fund, and plaintiff Struckman complains of a letter dated August 7, 1970, addressed to the Secretary-Treasurer of Local 618 and signed by four members of the Executive Board, accusing him of neglect of duties, the final result of which was that Struckman resigned.

The plaintiffs seek an injunction invalidating and rendering null and void

defendants' designation of another person as trustee of the Health and Welfare Fund in place and instead of Kelly, and the restoration of Struckman as Secretary-Treasurer of the Union, and other relief.

Plaintiffs invoked the jurisdiction of this Court under Section 609 of the Labor Management Reporting and Disclosure Act of 1959, as amended, 29 U.S.C. § 529, and under Section 501(a) and (b) of the Labor Management Reporting and Disclosure Act of 1959, as amended, 29 U.S.C. § 501.

The Constitution and By-Laws of the Union provide a detailed procedure for interunion charges and trial (Plaintiffs' Exhibit 1, Article XVIII). 29 U.S.C. § 411(a) (4) contains a proviso that a member "may be required to exhaust reasonable hearing proceedings (but not to exceed a four months lapse of time) within such organization before instituting legal or administrative proceedings against such organization or any officers thereof."

The courts in dealing with this chapter of labor law, which is entitled "Bill of Rights of Members of Labor Organizations", have often stated that this was not an open invitation to the courts to intervene at will in the internal affairs of labor organizations. In Gurton v. Arons, 339 F.2d 371, 375, the Second Circuit Court of Appeals said:

"The provisions of the L.M.R.D.A. were not intended by Congress to constitute an invitation to the courts to intervene at will in the internal affairs of unions. Courts have no special expertise in the operation of unions which would justify a broad power to interfere. The internal operations of unions are to be left to the officials chosen by the members to manage those operations except in the very limited instances expressly provided by the Act. The conviction of some judges that they are better able to administer a union's affairs than the elected officials is wholly without foundation. Most unions are honestly and efficiently administered and are much more likely to continue to be so if they are free from officious intermeddling by the courts. General supervision of unions by the courts would not contribute to the betterment of the unions or their members or to the cause of labor-management relations."

See also Williams v. International Typographical Union, 423 F.2d 1295, 1297 (C.A. 10, 1970), cert. den. 400 U.S. 824, 91 S.Ct. 47, 27 L.Ed.2d 53.

The court in Cefalo v. International Union of District 50 United Mine Workers, 311 F.Supp. 946, 953, said:

"While the exhaustion of internal union hearing procedures is normally required in order that the effectiveness and integrity of those procedures might be protected, a failure to exhaust them does not invariably foreclose judicial review of alleged grievances. A Union member seeking vindication of his Title I rights need not exhaust internal procedures where he might be prejudiced by the delay involved, where the Union's appellate body might be biased, or where the internal procdures might themselves be inadequate." (Citing many cases from a number of jurisdictions.)

An examination of Article XVIII of the Constitution and By-Laws of Local 618 (Exhibit 1) indicates to the Court that the procedure set up in the Constitution of Local 61 is adequate, that is, that the person who would hear the charges would be designated by the president of Local 618, who is named as a party defendant, but only as a result of the court requirement to do so, and against whom the plaintiffs have no complaint, leads the Court to the conclusion that the internal union hearing procedure in this matter was fair and was required, and that this Court is without jurisdiction. Even if this Court had jurisdiction to grant to the plaintiffs the relief they seek, under the testimony in this case the verdict of the Court would be for the defendants.

266

Turning first to the plaintiff, James G. Kelly: He was a member of Local 618 for many years, and on October 18, 1968, was named as a union trustee of the Welfare Fund by President Horn and Secretary-Treasurer Dorsey. The original Welfare Fund Trust Agreement was entered into on January 30, 1951 (Part of Exhibit 8) by Local 618. The Trust Agreement gives to the trustees wide administrative powers, both with respect to the administration of the Trust and with respect to the amendment of the Trust insofar as administration is concerned, but the Trust Agreement specifically provides in Article VI(1) that two of the four trustees shall be appointed by the Union. The plaintiff Kelly placed his reliance for his being a trustee upon the authority of the Executive Officers of Local 618 to appoint him as a union trustee on the resolution amending the Welfare Trust Agreement dated July 18, 1968 (Part of Exhibit 8), wherein Article VI of the original Trust Agreement was amended to provide that there be six trustees, three of whom were to be designated and appointed by the Executive Officers of the Union, and further, that the Executive Officers of the Union had the right of removal of those trustees.

■ An examination of this purported amendment to the Trust Agreement discloses that it was adopted and signed by the trustees of the Welfare Trust. The original Welfare Fund Trust Agreement did not give authority to the trustees to so amend the Trust Agreement to determine who should appoint the trustees representing the Union. Even had this amendment been approved by the Union itself, it would be of no value unless the Constitution and By-Laws of the Union (Exhibit 1) had been first amended, as Article IX(2) requires the approval of a majority of the Executive Board when an appointment such as this is made. The amendment of July 18, 1968, to the Welfare Trust ignores this article of Local 618's Constitution, and is, therefore, invalid insofar as appointment and removal of trustees is con-

cerned. The proposed amendment to the Trust Agreement would in effect take away from the Union any participation in the operation of the Trust and perpetuate its supervision in self-appointed individuals. While the Executive Board on March 31, 1970, went through the formalities of removing Kelly, there really was no legal occasion for removing Kelly as he had not been properly appointed.

■ Further, the contention that the removal was the result of Kelly's activities in the Union campaign a few months before is without merit. While there was some testimony by the co-plaintiff Struckman that in November of 1968 Dorsey had mentioned to the Executive Board the designation of Kelly as a Welfare trustee, the credible testimony discloses that this did not occur. The testimony conclusively discloses that at the time Struckman insists that this occurred there was no meeting, as Horn and Dorsey were in Washington engaged in contract negotiations.

The testimony discloses that when Vossmeyer, who replaced Kelly as trustee, first learned of the action by Horn and Dorsey with respect to Kelly, he complained that the trustee's selection should have been presented to the Executive Board, that the trustee should come from the Executive Board, and that in terms of seniority he was entitled to it. The conversations with respect to this started before any controversy arose regarding the election. The matter was delayed by Dorsey until after the election. Kelly testified that Vossmeyer came to see him and told him that because of his seniority he thought he was entitled to be appointed trustee rather than Kelly. While there were statements and counterstatements made in the heat of the election, the credible testimony discloses that Kelly's support of certain persons in the election had nothing whatever to do with his removal as a purported trustee of the Welfare Fund and Vossmeyer's proper appointment as a trustee.

Turning next to the evidence with respect to plaintiff, Edward Struckman: He was and had been an assistant business representative of the Union since July, 1951, and recording secretary of the Union since 1958. He resigned his office as recording secretary of Local 618 on December 31, 1970, because of health problems. His chief complaint is with respect to a letter signed by Vossmeyer and defendants Gibbs, Shackles and Sleme, dated April 7, 1970, and addressed to Dorsey, the Secretary-Treasurer and Executive Officer of the Union (Exhibit 11).

Certain alleged charges with respect to plaintiff Struckman were made in the letter regarding his position of assistant business representative and recording secretary of the Union. The testimony discloses that no action was taken as a result of the letter, that President Horn did not agree with it, and that plaintiff Struckman has continued to serve as assistant business representative. There is nothing in the record to support any claim that the letter was in any way the result of his actions in the past Union election.

██ Struckman did testify that after the letter was received Shackles and Gibbs, who signed the letter, and Dorsey, to whom it was addressed, criticized the way in which the minutes of the meeting were done and his servicing of several of the shops that were under his jurisdiction. While the record shows that remarks were made by various people during the heat of the election campaign, there is no testimony indicating any action as a result of the election campaigning with respect to Struckman. The letter of April 7th (Exhibit 11) was written several months after the election, and Struckman's resignation as recording secretary was more than a year after the election, a resignation for health purposes, which now he would have us set aside and direct that he be restored to his old position. The credible testimony does not support the accusations of retaliation that the plaintiff Struckman would have us believe occurred, nor that he was forced to resign.

For the reasons set forth above, plaintiffs' requests for a permanent injunction and other relief is denied.

The Court adopts this memorandum as its findings of fact and conclusions of law and the clerk of the court is directed to prepare and enter the proper order dismissing the action and giving judgment to the defendants.