645 F.2d 118
 106 L.R.R.M. (BNA) 2951, 90 Lab.Cas. P 12,661
 Edmund L. GALKE, Plaintiff-Appellant,
v.
James J. DUFFY, Individually and as President of Local 138,
International Union of Operating Engineers, AFL-CIO, and
Local 138, International Union of Operating Engineers,
AFL-CIO, Defendants-Appellees.
 No. 610, Docket 80-7707.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 9, 1981.
Decided March 23, 1981.
 
 Arthur Z. Schwartz, New York City (Hall, Clifton & Schwartz, New York City, of counsel), for plaintiff-appellant.
 Robert D. Brady, New York City (Corcoran & Brady, New York City of counsel), for defendants-appellees.
 Before KAUFMAN, OAKES and MESKILL, Circuit Judges.
 IRVING R. KAUFMAN, Circuit Judge:
 
 
 1
 Edmund Galke challenges the reclassification of his seniority status by Local 138, International Union of Operating Engineers (Union) and its president James Duffy. The Union manages a hiring hall for operating engineers seeking employment in the construction industry in New York's Nassau and Suffolk Counties. Job referrals are based on an employee's "industry seniority date," which it defines as the first date of regular employment within a job classification covered by the Union's collective bargaining agreement and falling within the Union's geographical jurisdiction.
 
 
 2
 In 1973 Galke succeeded in changing his seniority date from 1961 to 1947. This adjustment occurred after the Union received a letter purportedly written by an official of the Social Security Administration (SSA) stating that Galke had worked as an operating engineer in 1947. His status was reclassified in 1979, however, after the Union discovered that the letter was not authentic. President Duffy informed Galke of this change and notified him of his right to present additional evidence to authenticate his earlier seniority date. Galke appeared at a regular meeting of the Union's Executive Board in January 1980 to submit additional proof of his 1947 employment. The Board, however, found this evidence insufficient, and upheld the reclassification.
 
 
 3
 Galke instituted this lawsuit, claiming that the Board's action constituted "discipline" without a "full and fair hearing," as is required by the Labor Management Reporting and Disclosure Act.[1] He sought a preliminary injunction to restore his 1947 seniority date and requested back pay damages.[2] After conducting a hearing in August 1980, Judge Weinstein dismissed the action. He found Galke's testimony "incredible," and concluded that the Executive Board was justified in rejecting Galke's application for the 1947 seniority date. Because the Union's seniority reclassification does not constitute "discipline" under the LMRDA, we affirm Judge Weinstein's dismissal.
 
 
 4
 We recognize that the characterization of a particular union action as "discipline" is a question of law. Morrissey v. National Maritime Union, 544 F.2d 19, 25-26 (2d Cir. 1976). "Discipline" typically involves official union conduct that has the purpose and effect of punishing a member. See id. at 26. Thus, a union's black-listing of a member for his refusal to abide by an arbitration proceeding authorized in a collective bargaining agreement constitutes "discipline." Detroy v. American Guild of Variety Artists, 286 F.2d 75 (2d Cir.), cert. denied, 366 U.S. 929, 81 S.Ct. 1650, 6 L.Ed.2d 388 (1961). In contrast, unilateral union alterations of employee status are not "discipline" where reasonable regulations are uniformly and fairly enforced, Williams v. International Typographical Union, 400 U.S. 824, 91 S.Ct. 47, 27 L.Ed.2d 53 (1970), and where no stigma attaches to reclassification. Macaulay v. Boston Typographical Union, 474 F.Supp. 344, 346-47 (D.Mass.1979).
 
 
 5
 Local 138's action in reclassifying Galke's seniority status from 1947 to 1961 is more administrative and ministerial than punitive in nature. Galke was not penalized for submitting the fraudulent letter from the SSA to the Union. Instead, he was reclassified pursuant to the Union's Dispatching Procedure. This action merely limited Galke's employment opportunity to the status to which he was entitled. Moreover, Galke was not stigmatized or separated from comparable members in good standing. Miller v. Holden, 535 F.2d 912, 915 (5th Cir. 1976).
 
 
 6
 Judge Weinstein did not explicitly state that "discipline" was not involved in this case. He did find, however, that Galke presented no credible facts to prove that the Union's reclassification of his seniority date was improper. It follows, therefore, that the Union's action resulted from the uniform and fair application of the Dispatching Procedure. Williams, supra; Macaulay, supra. Accordingly, this adjustment was not disciplinary in nature.
 
 
 7
 We also decline to characterize Galke's reclassification as "discipline" for a more practical reason. It would be onerous to require a union to conduct a full and fair hearing, in which it would bear the burden of proof, whenever it discovers that certain information submitted by an employee seeking to change his seniority date is incorrect. Any union attempt to correct even clerical errors, then, would be "discipline," and the procedural safeguards of the LMRDA would necessarily attach. Compliance with these requirements clearly would not be "feasible" in that context. Morrissey, supra, 544 F.2d at 26.[3]
 
 
 8
 Since, as a matter of law, Galke was not subject to union "discipline," Judge Weinstein did not have to consider whether the informal post-classification proceedings conducted by the Executive Board constituted a "full and fair hearing." 29 U.S.C. § 411(a)(5). Moreover, the court was not required to submit the issue of damages to a jury. We conclude that the case was properly dismissed.
 
 
 9
 Affirmed.
 
 OAKES, Circuit Judge (dissenting):
 
 10
 I believe that the majority has the cart before the horse. It essentially decides that the district court correctly found that the appellant employee's case for an earlier seniority date was insubstantial or incredible and then holds that, because the union executive board's decision was correct, its action reducing appellant's seniority was not "discipline" within the meaning of sections 101(a)(5)(C) and 609 of the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. §§ 411(a)(5)(C), 529.[1] But the district court, as I see it, itself erroneously conceived the question before it as being whether the union's decision in the seniority dispute was correct on the merits, rather than whether the employee was disciplined within the meaning of the LMRDA. See Stein v. Mutuel Clerks' Guild of Massachusetts, Inc., 560 F.2d 486, 491 (1st Cir. 1977); Vars v. International Brotherhood of Boilermakers, 320 F.2d 576, 578 (2d Cir. 1963).
 
 
 11
 In my view the union's action here was "discipline" within the Act. See generally Detroy v. American Guild of Variety Artists, 286 F.2d 75, 81 (2d Cir.), cert. denied, 366 U.S. 929, 81 S.Ct. 1650, 6 L.Ed.2d 388 (1961). The determination whether application to an employee of a union regulation such as the reduction of appellant's seniority here constitutes discipline seems to turn on whether the employee has been "singled out" and whether he disputes the facts underlying the application of the regulation to him. See Beaird & Player, Union Discipline of Its Membership Under Section 101(a)(5) of Landrum-Griffin: What Is "Discipline" and How Much Process Is Due?, 9 Ga.L.Rev. 383, 392-98 (1975). Appellant contends that he is the only employee who has had his seniority date unilaterally changed by the union, and he disputes the facts supporting the application of the regulation to him. There is some evidence in the record in support of his position in addition to his own testimony and the letter from Robert A. Cook, Plaintiff's Exhibit 3, both of which were discredited by the district court. I refer specifically to Plaintiff's Exhibit 2.[2]
 
 
 12
 If I am correct that the union administered "discipline" then the only question to be determined by the court below, with respect to the LMRDA section 101(a)(5)(C) claim, was whether appellant had been afforded a "full and fair hearing" in the union disciplinary proceedings. I would remand for findings by the district court on this issue, particularly in regard to the impartiality of the union executive board. See Feltington v. Moving Picture Machine Operators Union Local 306, 605 F.2d 1251, 1256-57 (2d Cir. 1979), cert. denied, 446 U.S. 943, 100 S.Ct. 2169, 64 L.Ed.2d 799 (1980).
 
 
 13
 With respect to appellant's claim under LMRDA section 609, 29 U.S.C. § 529, the issue is whether the union's disciplinary action stemmed from a retaliatory motive. Cooke v. Orange Belt District Council of Painters No. 48, 529 F.2d 815, 819-20 (9th Cir. 1976). The question of motive is one for the trier of fact, Bradford v. Textile Workers of America Local 1093, 563 F.2d 1138, 1143 (4th Cir. 1977). And appellant was entitled to a jury trial of his damages claim, notwithstanding the fact that this claim was joined with a request for equitable relief under LMRDA section 101(a)(5)(C), Feltington, 605 F.2d at 1257-58.
 
 
 14
 Accordingly I dissent.
 
 
 
 [1]
 Section 101(a)(5) of the Labor Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 411(a)(5) (1976) provides:
 No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.
 
 
 [2]
 Galke also filed a charge with the National Labor Relations Board, claiming that the Union's reclassification of his seniority status constituted an unfair labor practice. The Board decided not to press charges against the Union on September 30, 1980
 
 
 [3]
 We are puzzled by the dissent's argument that our "practical" rationale for declining to characterize Galke's reclassification as "discipline" bars him from obtaining any remedy whatsoever. See dissent, infra, at n. 1. In fact, if such a reclassification results from a union's unfair labor practice, as was the case with a prior adjustment of Galke's status in 1977, the National Labor Relations Board is authorized to order reinstatement and other remedies
 In holding that the Union's reclassification of Galke's seniority date in 1979 is not "discipline" under the LMRDA, we do not express any view on whether that action could have been challenged as an unfair labor practice. As an alternative to bringing this action under the LMRDA, Galke wisely raised his grievance before the Board. The Board declined to pursue the complaint, and we see no reason to characterize this type of reclassification as "discipline" merely because it may not always be found by the Board to constitute an unfair labor practice.
 
 
 [1]
 The "practical" reason, advanced secondarily by the majority, for declining to characterize Galke's reclassification as "discipline" is not persuasive. As a "practical" matter, the reclassification here stemmed from the union's investigation into Galke's industry seniority date after the union had been ordered by the National Labor Relations Board to set Galke's seniority date back at 1947. Originally set as 1947, Galke's seniority date had been changed to 1961 by the union because of Galke's criticisms of union leaders regarding unsafe working conditions and other matters. In a 1977 proceeding the NLRB found that this change of Galke's seniority date to 1961 had been improperly motivated, in violation of sections 8(b)(2) and 8(b)(1)(A) of the National Labor Relations Act, 29 U.S.C. §§ 158(b)(2), 158(b)(1)(A), and ordered the union to reassign Galke a 1947 seniority date and pay him damages for lost wages. And, also as a "practical" matter, the reclassification here had the result that Galke was referred to work by the union only three days in the eight months prior to the union hearing. Thus viewed, no matter how bad or discriminatory the union motive for a seniority reclassification, or how serious the impact on the union member, the latter would have no remedy because, in the majority's words, "(i)t would be onerous to require a union to conduct a full and fair hearing ...."
 
 
 [2]
 Exhibit 2 is an "Itemized Statement of Earnings," a printout from the Social Security Administration showing earnings from H. V. Finlay Company in Brooklyn, New York, in 1946 and 1947
 There is no dispute that work with H. V. Finlay would have entitled Galke to seniority as of 1946, and that similar printouts were accepted by the union with respect to other members as sufficient proof under its seniority rules. No findings were made by the district court regarding the authenticity of the printout, or its more complete and even more helpful version submitted to the district court but not to the union, Exhibit 15.