694 F.2d 1237
 111 L.R.R.M. (BNA) 3145, 95 Lab.Cas. P 13,884
 Lyle HACKENBURG; A.J. Velasco; Joseph V. Morelli, Sr.;
David C. Sims; Richard Jackson; Richard L.
Jackson and Jerry M. King,
Plaintiffs-Appellees and
Cross-Appellants,
J.C. Westmoreland, Junior Richeson, and William Allison,
Plaintiffs-Appellees,
v.
The INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP
BUILDERS, BLACKSMITHS, FORGERS AND HELPERS, LOCAL
101 THEREOF, Defendants-Appellants and
Cross-Appellees.
 Nos. 81-1488, 81-1489 and 81-2421.
 United States Court of Appeals,
Tenth Circuit.
 Dec. 7, 1982.
 
 James C. Bull, Quiat, Bucholtz, Bull & Laff, P.C., Denver, Colo., for plaintiffs-appellees and cross-appellants.
 Joseph W. Moreland, Blake & Uhlig, P.A., Kansas City, Kan. (John W. McKendree and Rick P. Sauer, McKendree & Lubin, Denver, Colo., with him on the brief), for defendants-appellants and cross-appellees.
 Before SETH, Chief Judge, and BARRETT and DOYLE, Circuit Judges.
 WILLIAM E. DOYLE, Circuit Judge.
 
 
 1
 This is an appeal and cross-appeal by ten members of the International Brotherhood of Boilermakers, in which they complain about their having been benched, that is, deprived of the assignment to jobs for 90 days, as a result of their having been involved in a wildcat strike. The first claim of the plaintiffs is that the sanction imposed by the Union was contrary to 29 U.S.C. Sec. 411(a)(5) of the Landrum-Griffin Act, for the reason that they had been otherwise disciplined without the procedural protection that the Act demands. Their second claim is that the Union violated its duty to represent its members fairly when it entered into the collective bargaining agreement with Babcock and Wilcox Construction Co., hereinafter referred to as "B & W", because that agreement required the Union to bench members who B & W fired for misconduct. Plaintiffs further maintain that the Union arbitrarily applied the requirement to them. The third claim of the plaintiffs at trial was that the act of the Union benching them violated Colorado labor law.
 
 
 2
 This matter was considered by the United States District Court for the District of Colorado, which considered the three claims. The court found that federal law preempted plaintiffs' state law claims, and secondly, that the Union had fairly represented its members, both in reaching its collective bargaining agreement and applying the penalty provisions of that agreement. The trial court granted summary judgment as to the first claim in the Union's favor against seven plaintiffs, who admitted that they had voluntarily participated in the unauthorized walkout. The court ruled in favor of three other plaintiffs, however, because they claimed they had not willingly joined in the walkout.
 
 
 3
 The statute questioned, Sec. 411 of Title 29, is entitled "Bill of Rights of Members of Labor Organizations". Subsection (a)(5) provides:
 
 
 4
 [n]o member of any labor organization may be fined, suspended, expelled or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing. [Emphasis added.]
 
 
 5
 No question exists that the members were not afforded any of the rights set forth in 29 U.S.C. Sec. 411(a)(5).
 
 
 6
 The Union contends that the penalties imposed related to discipline outside the ambit of Sec. 411(a)(5); that the benching was not internal Union discipline requiring the application of the safeguards contained in Sec. 411. That is the issue which we must determine.
 
 
 7
 It was the trial court's position that the appellees' status as Union members was not impaired as a result of the events that gave rise to this lawsuit. The court ruled, however, that the 90 days benching was within the term of "otherwise disciplined" language of Sec. 411(a)(5).
 
 
 8
 This very issue has been considered in a recent decision of the Supreme Court, Finnegan v. Leu, --- U.S. ----, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982). In Finnegan the Supreme Court considered whether the Landrum-Griffin Act prohibited a union official from removing a union member from a position to which he had been appointed by the official's predecessor. In its opinion the Court considered the issue whether that removal was "otherwise disciplined." The Supreme Court was not directly ruling on Sec. 411 in its decision, but the Court did discuss that section very explicitly, and so we feel that it governs the present case. The question was whether a discharge from a position as a union employee constituted "discipline" within the meaning of Sec. 609 or Sec. 411(a). The statute that was addressed, however, was Sec. 609, that is 29 U.S.C. Sec. 529.
 
 The Court quoted the section as follows:
 
 9
 Sec. 609 * * * renders it unlawful for a union or its representatives "to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of [the Act]." 102 S.Ct. at 1870-71 (emphasis added by the Court).
 
 
 10
 The Court observed from the language of the provision and the legislative history that it was rank and file union members, not union officers or employees, as such, whom Congress sought to protect. The Court went on to say:Petitioners held a dual status as both employees and members of the Union. As members of Local 20, petitioners undoubtedly had a protected right to campaign for Brown and support his candidacy. At issue here is whether they were thereby immunized from discharge at the pleasure of the President from their positions as appointed Union employees. 102 S.Ct. at 1871 (emphasis in the original).
 
 
 11
 Following a very heated election for office within the Union, at which election the candidate of the petitioners, Finnegan, et al., lost, the President of the Local removed the petitioners. According to Leu, the person whom they opposed, he felt that the agents were loyal to Brown, and not him, and therefore, would be unable to follow and implement his policies and programs.
 
 
 12
 The Supreme Court carefully considered the history of this particular provision and noted that Congress was anxious to prevent arbitrary actions on the part of union officers which worked to the detriment of the rank and file members, and that the Members' Bill of Rights protection was provided in order to ensure the needed due process. The Court observed that: "[T]he Act's overriding objective was to ensure that unions would be democratically governed, and responsive to the will of the union membership as expressed in open, periodical elections," 102 S.Ct. at 1873, citing Wirtz v. Hotel Employees, Local 6, 391 U.S. 492, 497, 88 S.Ct. 1743, 1746, 20 L.Ed.2d 763 (1968). The Court continued: "Far from being inconsistent with this purpose, the ability of an elected union president to select his own administrators is an integral part of ensuring a union administration's responsiveness to the mandate of the union election." 102 S.Ct. at 1873.
 
 
 13
 The final conclusion of the Court was that the petitioners had failed to establish a violation of the Act. In the case at bar, however, it is not a question of intra-union politics. Rather, it is a matter of an employer requiring the Union to carry out the penalty provision of a collective bargaining agreement, and so the distinction which the Chief Justice made in his opinion appears to us to dictate plainly that petitioners were not entitled to the protection of the Members' Bill of Rights as set forth in 29 U.S.C. Sec. 411(a)(5).
 
 
 14
 The Union here is by agreement the appellant and cross-appellee. As cross-appellee the Union seeks to have the summary judgment upheld; that it fairly represented its members. As appellant, it seeks reversal of the trial court's determination that all the benched members had been "otherwise disciplined". As appellees, the Union members seek to have upheld the ruling that they were otherwise disciplined without due process and they wish to have this court so construe the Act. As cross-appellants, the members seek reversal of the ruling that they were fairly represented by the Union.
 
 
 15
 Based upon the Supreme Court's discussion and construction, we must reverse. It is very plain that in light of the Finnegan case the term "otherwise disciplined" in 29 U.S.C. Sec. 411(a)(5) is not applicable. This clause has a narrow meaning. This is apparent from its declaration that "no member of any labor organization may be fined, suspended, expelled or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; and (B) given a reasonable time to prepare his defense." Thus, it narrowly confines "otherwise disciplined" to regulatory actions that affect a union member's rights or status as a member of the union. See Finnegan v. Leu, supra, 102 S.Ct. at 1871. Plainly the statutory term "otherwise disciplined" does not apply to the 90-day suspension which was meted out to the petitioners. Finnegan v. Leu points the way, in no uncertain terms, to this conclusion. Also, this result is plainly within the objectives of the Landrum-Griffin Act. The ultimate conclusion is a matter of law and we are not bound by the trial court's interpretation and conclusion. Galke v. Duffy, 645 F.2d 118, 120 (2d Cir.1981).
 
 
 16
 We have considered the additional contention which arises as a cross-appeal, namely, the charge that the union members did not receive fair representation from the Union. True, the law requires fair representation. Steele v. Louisville & N.R.R., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944); Vaca v. Sipes, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967).
 
 
 17
 We recognize that the Union in taking over the hiring hall was called upon by the collective bargaining agreement to take actions which were not entirely beneficial to its members. The trial judge found that the non-beneficial results were outweighed by the benefits which flowed from managing the hiring hall. Thus, the condition is different from that presented in Steele v. Louisville and Vaca v. Sipes, supra. The hiring hall eased the obtaining of jobs.
 
 
 18
 Since the sanctions imposed were employment related rather than internal union related, the safeguards in Sec. 411(a)(5) are not available.
 
 
 19
 Hence, the judgment must be reversed and remanded with directions to dismiss the action.