**John R. SEYBERT, Plaintiff,**

v.

**INTERNATIONAL ORGANIZATION OF MASTERS, MATES AND PILOTS, Defendant.**

**No. 89 Civ. 0576(PNL).**

United States District Court, S.D. New York.

July 9, 1990.

---

**8.** Nastro retained the title of President of Regional Import & Export, although he no longer drew a salary.

John R. Seybert, Laurel Hollow, N.Y., pro se.

Burton Epstein, New York City, for defendant.

## MEMORANDUM AND ORDER

LEVAL, District Judge.

This is an action for violations of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 401, *et seq.*, and for breach of the duty of fair representation. Defendant International Organization of Masters, Mates and Pilots (IOMM & P) moves for summary judgment.

## BACKGROUND

Defendant IOMM & P is a labor union headquartered in Maryland. This suit concerns the actions of the Offshore Membership Group, the largest unit of the IOMM & P, which numbers approximately 3,600 members, and which represents deck officers on ocean-going vessels. Affidavit of F. Elwood Kyser, IOMM & P Secretary–Treasurer ¶ 3. Among other things, IOMM & P runs a hiring hall, at which sea-going jobs are allocated to members of the IOMM & P. In order to allocate these jobs, defendant has devised a Group Classification Plan.[1] Members are classified in groups A, B, or C depending upon how much time they have spent at sea (Group A is the highest; group C the lowest). Jobs are awarded at the hiring hall to the longest-registered member in the highest group classification who is present at the hall.

In 1966, plaintiff John R. Seybert, *pro se*, a member in good standing of the IOMM & P, attained Group A status, after completing 365 days of sea assignments. He believed that he would be able to retain his Group A classification until he either retired or resigned from the IOMM & P.

In late 1987, defendant conducted a mail ballot referendum among its Offshore Membership Group on the issue of whether the classification rule should be changed. Eighteen hundred of the members returned ballots, which were counted by an independent balloting agency. By a vote of 1012 to 807, the members approved an amendment to the union's by-laws which provided that a member with Group A status would be reclassified as Group B, unless, within the previous three years, the member had accumulated 180 days of combined seagoing employment and vacation days earned by such employment. The purpose of the rule, according to F. Elwood Kyser, the International Secretary–Treasurer of defendant, was to preserve access to the sea-going jobs for the largest number of active sea-going members maintaining continuous employment on IOMM & P vessels. The

Work Rule required that appeal of reclassification be taken to a committee composed of Offshore Vice Presidents. The Work Rule was implemented in January, 1988.

Some forty-odd members of the union have been reclassified to Group B under this rule. Kyser Aff. ¶ 9. Apparently, many of them are employed full time shoreside. Kyser Aff. ¶ 9. Plaintiff, who works full-time hours as a practicing attorney, was reclassified to group B in July, 1988, upon completion of a seagoing assignment and "registration," apparently while seeking a new assignment at the Port of New York hiring hall. Plaintiff continues to be a member in good standing of the IOMM & P, eligible to vote in all union referenda and attend all membership meetings. He is still eligible for seagoing jobs at the hiring hall. The reclassification affects only his priority of bidding for jobs in the hiring hall. Kyser Reply Aff. at 3.

Plaintiff requested review of his reclassification by the IOMM & P Convention, the highest body within the IOMM & P, which was due to convene on August 22, 1988. At the Convention, the appeal was referred to the Grievance and Appeals Committee. The Committee recommended a denial of the appeal, and the full Convention, on August 23, 1988, denied the appeal.

Seybert alleges that the reclassification was designed to penalize him for political activity within the union, along with the "farmers and lawyers and teachers," who "have the time to oppose the leadership." Seybert Aff. at 7. Seybert submits the transcript of the proceedings before the Convention, at which his appeal was presented. At that proceeding, one member of the union stated that he believed that this rule was designed to punish "finks." Others responded that the purpose of the rule was not to hurt finks, but to "provide for the full-time seamen," to ensure that the work goes to the regular members, rather than the part-timers.

Seybert then brought this lawsuit, alleging unlawful disciplinary actions under the

---

**1.** The Group Classification Plan is distinct from company seniority which an IOMM & P member may have. Seybert Aff. 3.

LMRDA, and arbitrary and discriminatory actions in violation of the union's duty of fair representation. Plaintiff also alleges that the union has illegally changed this rule to one with retroactive effect. Defendant moves for summary judgment.

## DISCUSSION

### I. *Summary Judgment*

Defendant IOMM & P moves for summary judgment. As the movant, defendant has the burden of demonstrating to the Court that there is no material issue of fact standing in the way of judgment. In other words, movant must show that there is an "absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once this showing has been made, the opponent "must set forth arguments or facts to indicate that a genuine issue—not merely one that is colorable—of material fact is present." *Gibson v. American Broadcasting Companies, Inc.*, 892 F.2d 1128, 1132 (2d Cir. 1989).

### A. *The Claim under the LMRDA*

■ Seybert claims that the Work Rules change and his reclassification amount to an illegal disciplinary action. 29 U.S.C. § 411 of the Labor Management Reporting and Disclosure Act states in relevant part:

(a)(1) *Equal Rights*

Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

. . . . .

(a)(5) *Safeguards against improper disciplinary action*

No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

Section 411(a)(5) protects a union member against disciplinary action by the union without adequate procedural protection. In order to obtain the protections of this section, a union member must show that she has been the victim of a disciplinary action. Discipline typically involves official union conduct that has the purpose and effect of punishing a member. *Galke v. Duffy*, 645 F.2d 118 (2d Cir.1981). The member may be directly penalized or singled out from other comparable members for special treatment by the union. Alternatively, the union might use a rule in an arbitrary, discriminatory, or bad-faith manner in order to punish a member. This, too, would constitute discipline within the meaning of the Act. *See Macaulay v. Boston Typographical Union*, 692 F.2d 201, 204 (1st Cir.1982). The even-handed application of a reasonable classification rule is not arbitrary action, however, and thus should not be interpreted as disciplinary. *See also Williams v. International Typographical Union*, 423 F.2d 1295 (10th Cir.), *cert. denied*, 400 U.S. 824, 91 S.Ct. 47, 27 L.Ed.2d 53 (1970) (reclassification of a printer from "working at the trade" to "not working at the trade" not disciplinary); *Miller v. Holden*, 535 F.2d 912, 915 (5th Cir.1976).

Plaintiff has failed to show the existence of a genuine issue of material fact that the union action was disciplinary. First, the union rule was a reasonable one, concerned with the allocation of jobs among the union members. The rule is designed to protect access to shipping jobs by individuals who regularly seek those jobs. The rule ensures that those who rely upon shipping as a predominant means of support, rather than as a part-time occupation, have preferred access to shipping jobs. *See Williams*, 423 F.2d at 1298 ("The creation and operation of priority rights are within the expertise of labor organizations."). Further, the rule was enacted by a solid

majority of the membership. The referendum indicates that the members, at least, believed the rule to be a reasonable one.[2]

Second, Seybert has raised no genuine issue that the union rule was applied in an arbitrary or discriminatory fashion. He asserts that the reclassification rule was applied to punish him for political activity. He has presented no *facts*, however, which might indicate an improper motivation on the part of the union, discrimination, or an intent to punish. *See Macaulay v. Boston Typographical Union*, 692 F.2d 201, 204 (1st Cir.1982) (reclassification of printer upheld); *Williams v. International Typographical Union*, 423 F.2d 1295 (10th Cir.), *cert. denied*, 400 U.S. 824, 91 S.Ct. 47, 27 L.Ed.2d 53 (1970) (reclassification of printer upheld). The rule has been applied to approximately forty union members who have worked infrequently in the last three years. Seybert does not show that this application has been selective in any way, or that the other reclassifications have been motivated by an intent to punish. Seybert is not precluded from regaining his Group A classification.[3]

I find that the application of the union work rule to Seybert was not "discipline" within the meaning of 29 U.S.C. § 411(a)(5). Accordingly, summary judgment is granted to defendant.

### B. *Duty of Fair Representation*

Defendant also moves for summary judgment on Seybert's claim that the union's actions in enacting and applying the work rule are arbitrary, discriminatory, and hostile, and breach the union's duty of fair representation towards the plaintiff.

■ The duty of fair representation, implied from the Labor–Management Relations Act, 29 U.S.C. § 159(a), obligates a labor union, in fulfilling its statutory duties, to represent all workers within the collective bargaining unit in good faith— treatment of a member must not be arbitrary, discriminatory, or hostile. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967) (in administering grievance machinery as agent of employees, a union must, in good faith and in nonarbitrary manner, make decisions as to the merits of the grievance). A union breaches its duty of fair representation when it acts, or omits to act, in an arbitrary manner, one which falls "far short of minimum standards of fairness to the employee," and which is unrelated to legitimate union interests. *Barr v. United Parcel Service*, 868 F.2d 36, 43 (2d Cir.1989) (quoting *NLRB v. Local 282*, 740 F.2d 141, 147 (2d Cir.1984)) (duty to represent employee at arbitration).

■ In allocating jobs among workers at a hiring hall, a union may not administer the hiring hall "arbitrarily or without reference to objective criteria." Such arbitrary conduct affects the employment status of the very individuals the union is obligated to represent. *See Boilermakers Local No. 374 v. N.L.R.B.*, 852 F.2d 1353 (D.C.Cir. 1988).

■ I find that plaintiff has failed to carry his burden of raising a genuine issue of material fact. First, the work rule at issue here was enacted to ensure that those workers who relied on shipping for full-time employment, or substantial employment, would have prior access to shipping jobs at the hiring hall. While the rule may have affected plaintiff adversely, together with others who engaged in shipping employment only seldom, the rule is a reasonable exercise of the union's discretion in allocating jobs among potential employees. The adverse effect on one group of employ-

---

**2.** Seybert does not argue that the referendum was tainted in any way. Absent more, this court cannot conclude that the passage of the rule itself somehow violated the LMRDA. It is clear that Congress did not intend the Act to allow courts to intervene at will in the internal affairs of unions. *Williams*, 423 F.2d at 1297.

**3.** Seybert makes much of the "retroactive" nature of the rule. The retroactive application of the rule does not, however, support Seybert's argument that the rule as applied was an illegal disciplinary measure. The members approved the retroactive rule by referendum. Further, the rule has been applied retroactively not just to him, but apparently to all forty-odd members of the IOMM & P affected by the rule. I find that the retroactivity of the rule raises no issue of fact as to the intention of the union leadership (or membership) in enacting the rule.

ees does not necessarily render a classification rule arbitrary or discriminatory, for "the complete satisfaction of all who are represented is hardly to be expected." *See Hays v. National Electrical Contractors Ass'n*, 781 F.2d 1321, 1324 (9th Cir.1985) (reclassification of electricians living more than 40 miles from hiring hall to lower priority employment group upheld); *see also Ford Motor Co. v. Huffman*, 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953).

Nor has plaintiff carried his burden of showing that the union breached the duty of fair representation in applying the rule to him. The union has apparently applied the rule across the board, to numerous individuals other than plaintiff. Accordingly, summary judgment is granted to defendant.[4]

C. *Retroactivity*

■ The complaint alleges that "[t]he Work Rule has been applied to the Plaintiff retroactively, in violation of the Labor Law of the United States and the Court decisions thereunder." Complaint ¶ 22. Defendant moves for summary judgment. Defendant argues that priority is not a "vested right," and may be retroactively modified by independent union action, by collective bargaining, or both. *C.f. Bautista v. Pan American World Airlines*, 828 F.2d 546, 550 (9th Cir.1987) (collective bargaining is a "continuing relationship," and may rationally accommodate changing circumstances). Plaintiff offers no opposition to defendant's motion. Summary judgment is granted.

## CONCLUSION

Summary judgment is granted to defendant. Submit judgment on ten (10) days' notice.

SO ORDERED.

---

**4.** Defendant argues that plaintiff failed to exhaust his administrative remedies. I find this argument doubtful, since plaintiff's case was heard and rejected by the Convention, but as I find that the union's actions were neither arbitrary nor discriminatory, I need not rule on the exhaustion issue.