Morris WEISS and John Carey, Individually and as Business Agents of Metal Trades Branch Local Union 638 Pipe Fitters and Apprentices of Greater New York, Nassau and Suffolk Counties and Vicinity of The United Association of Journeymen and Apprentices of The Plumbing and Pipe Fitting Industry of The United States and Canada, Plaintiffs,

v.

John TORPEY, Individually and as President of Enterprise Association Pipe Fitters and Apprentices of Greater New York, Nassau and Suffolk Counties and Vicinity Local Union 638 of The United Association of Journeymen and Apprentices of The Plumbing and Pipe Fitting Industry of The United States and Canada; and Martin Maddaloni, Individually and as President of United Association of Journeymen and Apprentices of The Plumbing and Pipe Fitting Industry of The United States and Canada, Defendants.

No. 97–CV–6583 (FB).

United States District Court,
E.D. New York.

Dec. 12, 1997.

Sapir & Frumkin L.L.P. by Donald L. Sapir, Robert T. McGovern, White Plains, NY, for Plaintiffs.

Law Office of Richard S. Brook, Mineola, NY, for Defendant Torpey.

O'Donaghue & O'Donaghue by Francis J. Martorana, Washington, DC, for Defendant Maddaloni.

### MEMORANDUM AND ORDER

BLOCK, District Judge.

In this case, which arises under the Labor–Management Relations Act ("LMRA"), 29 U.S.C. § 141 *et seq.* and the Labor–Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 401 *et seq.,* plaintiffs Morris Weiss ("Weiss") and John Carey ("Carey") seek, *inter alia,* to enjoin a union election scheduled for Saturday, December 13, 1997. Because the Court concludes that plaintiffs have fallen well short of establishing their entitlement to a preliminary injunction, their motion for injunctive relief is denied.

### BACKGROUND

This case arises out of the thorny and unorthodox relationship that has developed between two entities identified in the com-

plaint as the Metal Trades Branch Local Union 638 Pipe Fitters and Apprentices of Greater New York, Nassau and Suffolk Counties and Vicinity of the United Association of Journeymen and apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada ("Metal Trades Branch") and the Enterprise Association Pipe Fitters and Apprentices of Greater New York, Nassau and Suffolk Counties and Vicinity Local Union 638 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada ("Local Union" or "Local 638"). Plaintiffs are the elected Business Agents of the Metal Trades Branch, which represents approximately 2,200 members employed in the service industry of the plumbing and pipe fitting trade.

Defendant John Torpey ("Torpey") is the President of Local 638, which allegedly represents approximately 5,000 members employed in the building and construction industries of the plumbing and pipe fitting trade. Both the Metal Trades Branch and the Local Union fall within the jurisdiction of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada ("United Association" or "U.A."), the parent union which represents approximately 300,000 workers in the plumbing and pipe-fitting industry in the United States and Canada. Defendant Martin Maddaloni ("Maddaloni") is the President of the United Association.

## I. The Relationship Between the Metal Trades Branch and the Local Union

At issue in this case is a determination by the United Association that the Local Union and the Metal Trades Branch, which have traditionally operated with some degree of separateness, must henceforth operate as a single union and, *inter alia,* conduct joint elections. These joint elections are presently scheduled for Saturday, December 13, 1997, and plaintiffs seek a preliminary injunction to prevent these elections from going forward. Before discussing the specifics of the U.A.'s determination, a brief examination of the traditional relationship between the Metal Trades Branch and the Local Union is in order.

It is uncontested that the Metal Trades Branch and the Local Union are governed by the same President, Vice–President and Secretary–Treasurer; however, the U.A. Constitution expressly provides that members of the metal trades are not eligible to run for any of these offices. Both the Metal Trades Branch and the Local Union have offices in the same building in Long Island City. According to the affidavit of defendant Torpey ("Torpey Aff."): (1) the majority of Metal Trades Branch members work under the terms of a union-wide collective bargaining agreement that is negotiated by the President and Business Agent At Large of the Local Union, or under collective bargaining agreements that are virtually identical to the union-wide agreement; (2) as President of Local 638, he exercises substantial control over the administration of the Metal Trades Branch Pension, Welfare and Education Funds ("Branch Funds"); (3) the Local Union and the Metal Trades Branch file a single annual report with the Department of Labor, signed by their common Secretary–Treasurer; and (4) there is a single Business Agent at Large who is the principal contact person with the United Association for both the Metal Trades Branch and the Local Union, and this Business Agent at Large is in charge of the Business Agents for both the Local Union and the Metal Trades Branch.

Notwithstanding the foregoing, however, it is readily apparent from the record that the Metal Trades Branch has for decades operated with considerable autonomy. According to the allegations of the complaint, the Metal Trades Branch has traditionally, *inter alia:* (1) elected from its membership certain officers including two Business Agents, a Recording Secretary, an Advisory Board consisting of a Shop Steward from each shop, and an Executive Committee of four members; (2) paid the salary of its officers from its own funds; (3) maintained separate dues assessment structures; (4) maintained its own financial records; (5) conducted its own membership meetings; and (6) paid for its office staff from its own General Fund. Although the United Association and the Local

Union contest certain of plaintiffs' specific allegations in this regard, they do not dispute the essence of plaintiffs' position—that for decades the Metal Trades Branch has operated with "a degree of separateness" from the Local Union. *See* Torpey Aff. at ¶ 7.

## II. The Challenged Determination

Shortly after defendant Maddaloni assumed the office of U.A. President in January of this year, the United Association held a series of meetings that addressed the traditional relationship between the Local Union and the Metal Trades Branch and culminated in a determination that the Local Union would be required to amend its Constitution to bring it into line with provisions of the United Association's Constitution regarding certain organizational matters, including the election of officers. As a result of these amendments, the Metal Trades Branch would no longer be permitted to hold separate elections for its own Business Agents, Recording Secretary, and Executive Board; rather, the entire membership of the Local Union, including the Metal Trades Branch, would vote for thirteen Business Agents, a single Recording Secretary, and a five-member Executive Board.

This directive, which appears to have been part of an ongoing effort on the part of the United Association to streamline operations, is premised upon the assumption, sharply contested by plaintiffs, that the Metal Trades Branch is not a separate local union chartered by the United Association. Rather, it is defendants' position that Local 638 is a "combination" union containing construction trades *and* metal trades, and that a single charter to this effect was issued to the Local Union in February of 1947. The U.A. points out that Local 638 is listed as a single combination union in the U.A.'s September 1997 Roll Call, which is the official directory of U.A. local unions, and is listed as a combination local union in the General Officers' Report to the 1996 U.A. Convention. Consequently, defendants contend that the autonomy traditionally enjoyed by the Metal Trades Branch is, in fact, inconsistent with the charter of the Local Union and violative of the U.A. Constitution, and that the "merg-

er" at issue was simply an effort to eliminate procedures that were inconsistent with the governance structure and election procedures mandated for local unions by the U.A. Constitution.

By contrast, plaintiffs, claiming that the amendments dilute the voting strength of the Metal Trades Branch and destroy its separate identity, have taken the position that the autonomy enjoyed by the Metal Trades Branch since 1947 serves as evidence that it is a separate local union. This distinction is relevant because plaintiffs consequently contend that the United Association was required to follow certain procedures before ordering that the Local Union and the Metal Trades Branch operate as a single union, and that those procedures were not followed here. In support of their argument that proper procedures were not followed, plaintiffs include among their submissions a copy of a report written by Maddaloni entitled "Mergers of Local Unions Can Be Painful But Can Also Lead to Greater Strength," which appeared in the November 1997 U.A. Journal. In this report, defendant Maddaloni stated, in pertinent part, that "[N]o merger is ever even contemplated unless all indications are that it will benefit and enhance the job opportunities, training, political influence, and security of the members involved," and, "While there have been many mergers this year, every single one was undertaken only after long and careful investigation. We have looked at every aspect of each merger individually and have held comprehensive hearings with all of the local unions involved." Plaintiffs allege that the United Association did not conduct any investigation before requiring the Local Union to implement the changes at issue here. Further, plaintiffs maintain that the President failed to obtain the approval of the Executive Board for the consolidation, in violation of § 84 of the United Association Constitution. Finally, plaintiffs maintain that because the Metal Trades Branch is financially healthy, there is no economic reason for the alleged consolidation.

## III. The Complaint

On November 12, 1997, plaintiffs commenced this action. The complaint alleges

that the Metal Trades Branch has been deprived of its separate identity without its members having been afforded the opportunity to vote on the claimed "merger," and that the Local Union did not follow its own procedures in adopting the amendments at issue in this case. Plaintiffs also allege that they will sustain irreparable harm if the December 13 elections are permitted to go forward. The complaint contains three claims for relief. The first claim for relief alleges that defendants have violated two provisions of the LMRDA: (1) § 101(a)(1), 29 U.S.C. § 411(a)(1), which sets forth a union member's equal right to vote in elections; and (2) § 101(a)(5), 29 U.S.C. § 411(a)(5), which proscribes improper disciplinary action. The second claim for relief alleges that defendants have breached the terms of the U.A. and Local 638 Constitutions in violation of § 301 of the LMRA, 29 U.S.C. § 185. The third claim for relief seeks a declaratory judgment that the Metal Trades Branch is entitled to use its Protection Fund to pay for the instant litigation.

Also on November 12, 1997, plaintiffs presented a proposed Order to Show Cause to the Court seeking, *inter alia*, a Temporary Restraining Order that would have prevented the Local Union from conducting a meeting later that night at which candidates would be nominated for the December 13 elections. The Court heard arguments from the parties that afternoon and declined to sign the Order to Show Cause and Temporary Restraining Order, concluding that plaintiffs had failed to demonstrate that they would be irreparably harmed if the nominating meeting went forward. Acknowledging that plaintiffs were also seeking to enjoin the elections scheduled for December 13, 1997, the Court established a briefing schedule for submissions on the discrete issue of whether plaintiffs were entitled to a preliminary injunction preventing the December 13, 1997 elections from taking place.

## DISCUSSION

### I. Standard For a Preliminary Injunction

■ The standard for obtaining a preliminary injunction is well established. A plaintiff must show "a threat of irreparable injury and either (1) a probability of success on the merits or (2) sufficiently serious questions going to the merits of the claims to make them a fair ground of litigation, and a balance of hardships tipping decidedly in favor of the moving party." *Time Warner Cable of New York City v. Bloomberg L.P.*, 118 F.3d 917, 923 (2d Cir.1997); *Int'l Bhd. of Teamsters v. Local Union Number 810*, 19 F.3d 786, 789 (2d Cir.1994).

■ "The showing of irreparable harm is 'perhaps the single most important prerequisite for the issuance of preliminary injunction.' The law in this Circuit requires a showing that irreparable damages are likely, not merely possible." *Mason Tenders Local Union 59 v. Laborers' International Union of North America*, 924 F.Supp. 528, 542 (S.D.N.Y.1996), *aff'd*, 101 F.3d 686 (2d Cir. 1996) (quoting *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 275 (2d Cir.1985)) (other internal quotations omitted). Further, "[n]eed for proof of irreparable harm is 'more pronounced' when 'the plaintiff establishes something less than probable success on the merits.'" *Local Unions 20, 135, 257, 296, 531, 740, 902 and 1456 of the United Bhd. of Carpenters & Joiners of America v. United Bhd. of Carpenters & Joiners of America*, 1997 WL 630179 at *3 (S.D.N.Y. Oct.9, 1997) (quoting *Triebwasser & Katz v. American Tel. & Tel. Co.*, 535 F.2d 1356, 1359 (2d Cir.1976)), *aff'd*, 131 F.3d 131 (2d Cir. 1997).

### II. Are Plaintiffs Entitled to a Preliminary Injunction?

#### A. *Irreparable injury*

■ Plaintiffs' primary argument is that the Metal Trades Branch will be irreparably harmed if the elections are permitted to go forward on Saturday because members will be deprived of their right to self-determination and their right to be represented by their own leaders. In support of this argument, plaintiffs rely heavily upon the opinion of the district court in *Mason Tenders, supra*, which was affirmed without reported opinion by the Second Circuit. However, *Mason Tenders* is readily distinguishable from the instant case. In that case, the international union adopted a reorganization

plan that consolidated ten separate local unions into two newly-chartered unions, revoked the charters of the affected local unions, immediately transferred their assets, and dismissed their elected officials. The local unions challenged the reorganization plan and sought a preliminary injunction blocking its implementation. On those facts, the district court, as affirmed by the Second Circuit, determined that the affected local unions had established irreparable harm, noting that the local unions would no longer be represented by union members that they had democratically elected. *Mason Tenders*, 924 F.Supp. at 542–543.

In this case, by contrast, the governance structure of the Local Union and the Metal Trades Branch is significantly intertwined. It appears from the documentary evidence before the Court that at least since 1947, the Metal Trades Branch has not been separately chartered. Further, as noted above, even prior to the alleged "merger," the Metal Trades Branch and the Local Union had the same President, Vice–President and Secretary–Treasurer. In addition, according to the Torpey affidavit, the Business Agents elected by the Metal Trades Branch are answerable to the Local Union's Business Agent at Large. Thus, the Metal Trade Branch's right to self-determination has traditionally been subject to significant limitations, and plaintiffs' arguments regarding the potential impact of the elections upon its right to self-determination appear overstated.

Further, as other courts have recognized, even if the elections proceed, there will be no irreparable injury because if it is ultimately determined on the merits that the reorganization ordered by the U.A. was illegal and the election improper, the results of the upcoming election could be voided and another election held. *See Rodriguez v. Holloway*, 1997 WL 151739, at *11 (S.D.N.Y. March 4, 1997); *Bernard v. Local 100, Transport Workers Union of America*, 873 F.Supp. 824, 827–828 (S.D.N.Y.1995), *aff'd*, 112 F.3d 67 (2d Cir.1997).

█ Wholly apart from the question of whether the election should be permitted to go forward, plaintiffs also request an injunction preventing the Local Union from exercising control over the assets of the Metal Trades Branch. However, as set forth in the Torpey Affidavit, the Local Union already exercises some measure of control over the Branch Funds. The papers are devoid of any indication that the Local Union has threatened to assume control over the funds of the Metal Trades Branch. Moreover, as the Second Circuit noted in *San Filippo v. United Bhd. of Carpenters & Joiners*, 525 F.2d 508, 512 (2d Cir.1975), if plaintiffs ultimately prevail at trial, they will have a legal damages remedy against defendants for any assets seized. *See also Local Unions 20*, 1997 WL 630179, at *19; *cf. Mason Tenders*, 924 F.Supp. at 543. Therefore, the Court concludes that plaintiffs have not demonstrated that they will be irreparably harmed if this relief is not granted.

On balance, therefore, the Court concludes that plaintiffs have not made an adequate showing of irreparable harm, and that they are consequently not entitled to injunctive relief.

### B. Probability of Success On the Merits

Even if the Court had determined that plaintiffs had made an adequate showing of irreparable harm, the Court is nonetheless convinced that plaintiffs have failed to demonstrate either a probability of success on the merits, or sufficiently serious questions going to the merits of their claims so as to make them a fair ground for litigation. In setting forth the basis for this conclusion, the Court will examine each of plaintiffs' statutory claims for relief in turn.

### 1. 29 U.S.C. § 411(a)(1)

█ In their first claim for relief, plaintiffs allege that the U.A. determination has "deprived [Metal Trades Branch members] of their statutory right to vote in internal union elections and hold elective office," in violation of § 101(a)(1) of the LMRDA, 29 U.S.C. § 411(a)(1). This section, which is contained in Title I of the LMRDA, provides:

Every member of a labor organization shall have equal rights and privileges within such organization to nominate candi-

dates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and by-laws.

However, the Court initially observes that § 101(a)(1) does not protect the rights of individual plaintiffs to hold union office. *See Local 115, United Bhd. of Carpenters & Joiners of America v. United Bhd. of Carpenters & Joiners of America,* 247 F.Supp. 660, 662 (D.Conn.1965). Moreover, the Court notes that plaintiffs do not have standing to raise the claim that the determination deprives other union members of their rights to vote, as it is well established that union members lack standing to enforce the rights of other union members. *See Ellis v. Civil Service Employees Ass'n, Inc., Local 1000,* 913 F.Supp. 684, 688 (N.D.N.Y.1996). The Court therefore turns to an examination of whether plaintiffs have established a probability of success on the merits that the challenged determination deprives them of their individual rights to vote in internal union elections.

The Supreme Court has held that § 101(a)(1) "is no more than a command that members and classes of members shall not be discriminated against in their right to nominate and vote." *Calhoon v. Harvey,* 379 U.S. 134, 139, 85 S.Ct. 292, 295, 13 L.Ed.2d 190 (1964). The relevant inquiry, therefore, is whether the complaining union members have been "denied [a] privilege or right to vote or nominate which the union has granted to others." *Id.; see also Ellis,* 913 F.Supp. at 688–689 ("The core of the statute's equal rights provision is the prevention of discrimination against union members and classes of union members"); *Bernard,* 873 F.Supp. at 828 ("[T]he protections of Title I have never been construed to encompass ... a claim where all union members have an equal right to nominate and vote for eligible candidates"); *Johnson v. Kay,* 742 F.Supp. 822, 827–828 (S.D.N.Y.1990) ("[Section] 101(a)(1) provides that where members elsewhere have been given the right to vote on an issue, the union may not unreasonably discriminate against members in the exercise of that vote.")

Based upon the foregoing, the Court is not entirely convinced that plaintiffs have stated a claim for violation of § 101, as they are not being discriminated against in the exercise of their right to vote. Both plaintiffs, as members of the Metal Trades Branch, will have the same right to vote for union officials as any other member of the Local Union. Rather, as defendants point out, plaintiffs' claim that the mandated changes in the Local Union's election procedure are invalid arguably falls within the ambit of Title IV of the LMRDA, 29 U.S.C. §§ 481–483. Title IV sets standards for the qualification and nomination of candidates and the manner in which elections are conducted. This distinction is significant because if plaintiffs' claim arises under Title IV, the Court is clearly without jurisdiction to consider it. The Supreme Court has held that Congress's intent in enacting Title IV was "not to permit individuals to block or delay union elections by filing federal-court suits for violations of Title IV." *Calhoon,* 379 U.S. at 140, 85 S.Ct. at 296. Instead, the statute requires the investigation of any Title IV claim by the Secretary of Labor after the election takes place. 29 U.S.C. § 482. If the Secretary of Labor finds probable cause to belief that a violation of Title IV has occurred, then it is up to the Secretary to bring a civil action against the labor organization to set aside the results of the election. *Id.* Moreover, 29 U.S.C. § 483 provides that this remedy is exclusive. Thus, to the extent that plaintiffs may have a claim under Title IV of the LMRDA, the Court is without jurisdiction to order the injunctive relief sought here.

But even if the Court were convinced that plaintiffs have stated the elements of a claim under § 101(a)(1), the Court would still be without the power to enjoin the upcoming elections. The Supreme Court case of *Local No. 82, Furniture and Patio Moving v. Crowley,* 467 U.S. 526, 104 S.Ct. 2557, 81 L.Ed.2d 457 (1984), is dispositive. In that case, the Court held that "whether suits alleging violations of Title I of the LMRDA may properly be maintained during the course of a union election depends upon the

appropriateness of the remedy required to eliminate the claimed statutory violation." *Id.* at 550, 104 S.Ct. at 2570. Indicating that judicial supervision of ongoing union elections was undesirable, the Court stated that a district court could properly order that minimal, unintrusive remedies be taken to ensure that § 101(a)(1) rights were protected, but that a court could not take any steps to invalidate an ongoing union election, and, consequently, vacated the preliminary injunction issued by the district court. *Id.* at 550, 551 n. 23, 104 S.Ct. at 2570, 2571 n. 23. Thus, pursuant to *Crowley,* the Court is without the power to order the injunctive relief requested by plaintiffs. *See Rodriguez,* 1997 WL 151739 at *11; *Bishop v. Duval,* 592 F.Supp. 16, 18 (S.D.N.Y.1984).

Accordingly, the Court concludes that plaintiffs have failed to establish a probability of success on the merits of their § 101(a)(1) claim. Moreover, the Court is not even convinced that they have demonstrated sufficiently serious questions going to the merits to justify a preliminary injunction.

### 2. 29 U.S.C. § 411(a)(5)

■ Plaintiffs also maintain that the challenged determination constitutes improper disciplinary action in violation of § 101(a)(5), 29 U.S.C. § 411(a)(5). This section provides:

> No member of any labor organization may be fined, suspended, expelled or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; [and] (C) afforded a full and fair hearing.

" 'Discipline' typically involves official union conduct that has the purpose and effect of punishing a member." *Galke v. Duffy,* 645 F.2d 118, 120 (2d Cir.1981). "The member may be directly penalized or singled out from other comparable members for special treatment by the union. Alternatively, the union might use a rule in an arbitrary, discriminatory, or bad-faith manner in order to punish a member." *Seybert v. International Organization of Masters, Mates and Pilots,* 755 F.Supp. 561, 564 (S.D.N.Y.1990).

In *Local 311 v. United Ass'n of Journeymen and Apprentices of Plumbing and Pipefitting Industry of U.S. and Canada,* 1988 WL 74053 (D.Conn.1988) (Cabranes, J.), the court considered precisely the argument raised by plaintiffs here—that the "merger" of local unions diluted voting rights and constituted an improper disciplinary practice. In rejecting this claim, the court quoted the following language from *United Bhd. of Carpenters Local 853 v. United Bhd. of Carpenters,* 83 L.R.R.M. (BNA) 2759, 2765, 1973 WL 1199 (D.N.J.1973), *aff'd,* 480 F.2d 919 (3d Cir.1973):

> Any merger, consolidation or transfer between local unions necessarily diminishes the voting power of any individual or voting block to the detriment, perhaps, of either the dissolved or the accepting organization. For that matter, the acceptance of every additional member into a union weakens the power of determination shared by those already belonging to the local when voting and deliberating upon union business.

The court in *Local 311* observed that the plaintiff's argument "would effectively render all mergers between local unions 'discipline' within the meaning of the [LMRDA]," *Local 311,* 1988 WL 74053, at *3, and further noted that there is no evidence that Congress intended such a drastic result. *See also Local Union No. 1 v. Int'l Union of Bricklayers,* 1992 WL 118798, at *5 (D.Minn.1992) ("Whether a merger of unions constitutes a disciplinary sanction within the meaning of [ § 101(a)(5)] turns on the effect of the merger on the members' statutorily protected rights. Where the members' rights are substantially protected, merely merging locals does not 'otherwise discipline' members of the merged locals." (citations omitted)).

As set forth at length above, the parties sharply dispute whether a merger has in fact taken place. Regardless of this factual dispute, however, the Court is persuaded by the reasoning employed by the court in *Local 311* that a consolidation of local unions does not constitute discipline for purposes of § 101(a)(5). *But see Pittman v. United Bhd. of Carpenters & Joiners of America,* 251 F.Supp. 323, 324 (M.D.Fla.1966). Any other result would significantly undermine the abil-

ity of union leaders to exercise their discretion to implement changes in the structure and operation of local unions. Accordingly, the Court determines that plaintiffs have not demonstrated a probability of success on this claim, nor does the Court conclude that plaintiffs have demonstrated sufficiently serious questions going to the merits to warrant the imposition of a preliminary injunction.

### 3. 29 U.S.C. § 185

■ Plaintiffs' second claim for relief alleges that the U.A. and the Local Union breached the terms of their Constitutions in violation of § 301 of the LMRA, 29 U.S.C. § 185. It is well settled that breach of an international union's constitution is actionable under this section. *See Local Unions 20, 135, 257, 296, 531, 740, 902, 1456,* 1997 WL 630179, at *8; *Ass'n of Contracting Plumbers v. Local Union No. 2,* 676 F.Supp. 523, 530 (S.D.N.Y.1988), *aff'd,* 841 F.2d 461 (2d Cir.1988). However, the alleged breach of a *local* union's constitution is not actionable under this section. *See Johnson,* 742 F.Supp. 822, 828 n. 1 (reasoning that a local constitution is not a contract between labor organizations within the meaning of § 301 and that the court lacks jurisdiction under the statute to pass upon such claims); *see also Abrams v. Carrier Corp.,* 434 F.2d 1234, 1248 (2d Cir.1970) (whether § 301 creates federal jurisdiction over claim arising under local constitution is "open to grave doubt"). The Court will therefore limit its examination to plaintiffs' claims that the U.A. violated its own Constitution.

The Court first notes that there is a well-established policy of avoiding judicial interference in internal union matters. As the Second Circuit has indicated:

> Courts have no special expertise in the operation of unions which would justify a broad power to interfere. The internal operations of unions are to be left to the officials chosen by the members to manage those operations except in the very limited instances expressly provided by the [LMRDA].... General supervision of unions by the courts would not contribute to the betterment of the unions or their members or to the cause of labor-management relations.

*Gurton v. Arons,* 339 F.2d 371, 375 (2d Cir. 1964); *see also Intl. Bhd. of Teamsters v. Local Union No. 810,* 19 F.3d at 793 (federal courts should not "busy themselves with the internal affairs of unions, a task for which they are ill-equipped"). Consequently, courts have consistently held that a union's interpretation of its own constitution is entitled to "great deference" so long as it is not either "patently unreasonable" or made in bad faith. *Mason Tenders,* 924 F.Supp. at 543 (quoting *Ass'n of Contracting Plumbers,* 676 F.Supp. at 530). "Courts have routinely followed the rule of deference to union interpretations of their constitutions, and upheld international unions' reorganization and restructuring of their subordinate bodies ." *Mason Tenders,* 924 F.Supp. at 544.

In light of the foregoing, the Court therefore considers whether the U.A.'s interpretation of its Constitution to permit the challenged reorganization was either patently unreasonable or undertaken in bad faith.

### a. Was the determination patently unreasonable?

As noted above, § 84 of the U.A. Constitution provides that the President has the power to order consolidation of local unions, but that he must first obtain the sanction of the General Executive Board. The legal issue that is therefore central to plaintiffs' claim is whether the U.A.'s determination that the changes at issue here did not constitute a consolidation of local unions within the meaning of this section is patently unreasonable.

The Court concludes that plaintiffs have not made a showing of probable success on the merits of this claim. Section 46 of the Constitution gives Maddaloni broad authority to "render decisions and to adjust disputes ... concerning the interpretation or application of [the] Constitution." The U.A. has submitted documentary evidence that strongly suggests that the Metal Trades Branch and the Local Union have but a single charter, issued in 1947. It is also essentially uncontested that for decades, neither the Metal Trades Branch nor the Local Union have conducted their elections in a manner consistent with the U.A. Constitution. Under

those circumstances, the Court concludes that the U.A.'s directive that the Local Union amend its Constitution so that the Metal Trades Branch and the Local Union conduct joint elections was not patently unreasonable.

*b. Was the determination in bad faith?*

The Second Circuit has indicated that the inquiry into bad faith revolves around whether union leaders "acted contrary to the union's best interest, acted in [their] own self-interest[s], or that [their] actions were so outrageous or unconscionable that even if they were in the best interest of the union, they would constitute bad faith." *Int'l Bhd. of Teamsters,* 19 F.3d at 794. Using this test as a guide, it is apparent to the Court that plaintiffs have fallen well short of establishing bad faith.

There are no allegations here that defendants acted in their own self-interest. Therefore, the Court turns to whether plaintiffs have established that defendants acted contrary to the union's best interest or in an outrageous or unconscionable way. Plaintiffs give three examples of conduct that they claim constitutes bad faith. First, they contend that the amendments were not read at two successive meetings of the Local Union, as required by the Local Union's Constitution. However, as noted above, any claims arising under the local constitution are not actionable under § 301. Second, plaintiffs contend that the U.A.'s failure to investigate the "merger," in accordance with the criteria discussed in Maddaloni's November 1997 report in the UA Journal, constitutes bad faith. However, as noted above, the Court has already concluded that the U.A.'s determination that the Metal Trades Branch and the Local Union constitute a single union was not patently unreasonable. Consequently, the Court is not prepared to find that Maddaloni's failure to follow procedures that were alluded to in a monthly newsletter, and that apparently are not contained in either the U.A. Constitution or any of its by-laws, rises to the level of bad faith as defined by the Second Circuit. Finally, plaintiffs contend that the impact that the changes will have upon the ability of the Metal Trades Branch to elect their own business agents is itself evidence of bad faith. However, the Court

simply cannot conclude that this conclusory allegation, without more, rises to the level of bad faith for purposes of a § 301 claim. To summarize, absent a showing of either bad faith or patent unreasonableness, the U.A. determination is entitled to substantial deference from this Court.

The Court concludes, therefore, that plaintiffs have fallen well short of demonstrating a probability of success on the merits of their § 301 claim. Further, they have not demonstrated the existence of sufficiently serious questions going to the merits of their claims to warrant the injunctive relief sought.

On balance, therefore, plaintiffs have failed to demonstrate the existence of irreparable harm, and, in any event, have failed to show either a probability of success on the merits or the existence of sufficiently serious questions going to the merits of their claims to warrant the award of a preliminary injunction.

### CONCLUSION

For the reasons set forth above, plaintiffs' motion for a preliminary injunction to preclude the elections scheduled for December 13, 1997 from going forward is denied.

**SO ORDERED.**