Roy COMMER, Plaintiff,

v.

Gerald McENTEE, John Seferian, the American Federation of State, County and Municipal Employees, District Council 37, AFSCME, Stanley Hill, Martin Lubin, Mark Shaplo, Robert Meyer, Ralph Pepe, Louis Albano, Robert Mariano, Uma Kutwal, Michelle Keller, John Does 1–30, and Rudolph Giuliani, as Mayor of the City of New York, Defendants.

No. 00 Civ. 7913(RWS).

United States District Court, S.D. New York.

Nov. 13, 2000.

Roy Commer, Staten Island, NY, for pro se.

Shapiro, Beilly, Rosenberg, Aronowitz, Levy & Fox, New York City by Barry I. Levy, Gina M. Fonseca, of counsel, for Gerald McEntee, John Sefarian, AFSCME International, AFSCME District Council 37, Robert Mariano, Uma Kutwal, Michelle Keller, Ralph Pepe.

## OPINION

SWEET, District Judge.

Plaintiff Roy Commer ("Commer") has moved *pro se* for a preliminary injunction reinstating him as president of Civil Service Technical Guild, Local 375 ("Local 375"), and enjoining the defendants from barring him from running for the office of Local 375 president or for any other elective union office, pursuant to Federal Rule of Civil Procedure 65. Defendants Gerald McEntee ("McEntee"), the American Federation of State, County, and Municipal Employees, AFL–CIO ("AFSCME"), John Seferian ("Seferian"), AFSCME District Council 37 ("DC 37"), Robert Mariano ("Mariano"), Uma Kutwal ("Kutwal"), Michelle Keller ("Keller"), and Ralph Pepe ("Pepe") (collectively, the "Defendants"), oppose the motion.[1] For the reasons set forth below, the motion will be denied.

### The Parties

Commer is a member of Local 375 and was at all relevant times previously the president of the local.

Local 375 is a union representing technical employees of the City of New York.

DC 37 is the regional governing body of AFSCME and is comprised of several dozen local unions.

AFSCME is an international union.

McEntee is President of AFSCME.

Seferian is chairperson of the AFSCME Judicial Panel.

Kutwal is currently Acting President of Local 375 and was at all relevant times previously the First Vice–President of Local 375.

Keller is Executive Committee Chair of Local 375.

Mariano is Treasurer of Local 375.

Pepe is the DC 37 Building Manager.

### Prior Proceedings

The instant action was initiated by the filing of a complaint on October 18, 2000.[2] The complaint alleges that the Defendants imposed union discipline on Commer, namely, that they suspended him from union office and banned him from running for new office for a two-year period, in retaliation for speech activity protected under Section 101(a)(2) of the Labor–Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411(a)(2). Jurisdiction is alleged pursuant to LMRDA § 102, 29 U.S.C. § 412.

In November 1998, internal union charges were filed against Commer, then-president of Local 375, by Local 375 First Vice–President Kutwal and certain other members of the Local 375 Executive Committee. The AFSCME Judicial Panel as-

---

**1.** Defendants Stanley Hill, Martin Lubin, Robert Myer, and Mark Shaplo are alleged in the complaint to have been at all relevant times officers of DC 37 and trustees of the DC 37 Trust Fund. Although DC 37 has appeared in this action, these individual defendants have not. In addition, defendant Louis Albano, alleged in the complaint to have been at all relevant times an officer of Local 375, has not appeared. However, the appearance of these defendants is not necessary for resolution of the instant motion. Defendant Rudolph Giul-

iani ("Giuliani") has appeared and has indicated that he will move to dismiss the case as to him for failure to state a claim. Although no motion to dismiss has yet been filed, determination of such a motion is not necessary to resolve the instant motion.

**2.** Because Commer is *pro se,* the complaint is deemed filed when it was received by the Pro Se Clerk's Office.

sumed original jurisdiction over the case, Judicial Panel Case No. 98–111–A ("JPC 98–111"), on November 12, 1998. Amended charges were filed in this same matter on January 29, 1999.

On June 23, 1999, the AFSCME Trial Officer issued a decision dismissing fifteen of the eighteen charges against Commer. Among the charges sustained by the panel was a charge that Commer had distributed literature in the name of the Guild [3] without authorization from an appropriate body, namely, the Local 375 Executive Committee or delegate body, in violation of Article XIX, Section 3 of the Local 375 Constitution, and that by the same conduct he had improperly used union funds in violation of Article X, Section 2(B) of the International Union Constitution. The Trial Officer issued a formal reprimand and warning to Commer against repeating the acts of which he had been found guilty, and ordered that he make restitution to Local 375 for the full cost of the printing and/or mailing of the unauthorized materials mentioned above.

The Trial Officer's decision was affirmed by the Full Judicial Panel on December 8, 1999, and the Full Judicial Panel's decision was affirmed by the Appeals Committee of the AFSCME International Convention on or about June 26–30, 2000.

On January 11, 2000, Kutwal filed new charges against Commer alleging *inter alia* that he had improperly used union funds to print and distribute an election-related mailing without the permission of the Local 375 Executive Committee or delegate body. On February 2, 2000, Kutwal and other members of the local's Executive Committee filed additional charges against Commer alleging that he had failed to make restitution in accordance with the decision in JPC 98–111 and thereby had violated the AFSCME International Constitution, Article X, Sections 2(F) and 22, by failing to comply with a decision of the Judicial Panel.

The Judicial Panel assumed original jurisdiction over the case, Judicial Panel Case No. 00–13–A ("JPC 00–13"), on February 24, 2000. A hearing was held on April 13, 2000. On May 1, 2000, the Trial Officer, Seferian, issued a decision finding Commer guilty of the charges. Specifically, Seferian concluded that (1) Commer had violated Article XIX, Section 3 of the Local 375 Constitution by expending union funds and distributing an election mailing in the name of the local union without approval from the Executive Committee or the delegate body, and (2) Commer had violated the International Constitution by failing to make restitution to the local union as required by JPC 98–111.

Seferian found "aggravating circumstances" with respect to the first charge because:

> [T]he decision in the earlier case [98–111] made it clear to [Commer] that he did not have the unilateral power to authorize such mailings. He admitted that he understood that approval was required but decided to send the mailing without approval because he did not believe he could get the votes for approval. This is the second time he has ignored the constitutional process established by the local's constitution simply because it did not suit him.

Seferian found with respect to the second set of charges that Commer was "guilty of refusal or deliberate failure to carry out a legally authorized decision of the Judicial Panel."

Seferian ordered that Commer be removed from the office of the Local 375 presidency and that his right to seek or hold office "at any level in the union" be suspended *for a period of two years from the date of the decision.* On September 8, 2000, the Judicial Panel affirmed Seferian's decision.

██ On October 18, 2000, Commer moved by order to show cause for a pre-

---

**3.** The "Guild" is Local 375.

liminary injunction enjoining the defendants from barring him from running for the office of Local 375 president in elections to be conducted in December 2000, or for any other union office, and reinstating him as president of Local 375. The matter was set down for hearing on October 20, 2000. At that time the Court granted the Defendants' request for an adjournment until November 1, 2000, upon the Defendants' representation that if, prior to November 14, 2000, the Court determined that Commer was entitled to run for office, then Commer could and would be included as a candidate in the ballots to be mailed out by the local on that date. Written submissions were received, including affidavits and exhibits, and oral argument was heard on November 1, 2000, at which time the matter was deemed fully submitted.[4]

### Discussion

### I. *Findings Of Fact*

Commer was elected president of Local 375 in January 1998 after defeating an 18-year incumbent. Commer headed a slate of local union candidates that ran on a reform movement platform against the then-incumbent officers. That slate included, among others, Kutwal, Herriott Pierre–Louis, Michael Gimbel, and Rhajiv Gowda.

In November 1998, in connection with the charges brought against Commer at that time, the Local 375 Executive Committee suspended Commer from office. Commer was reinstated on November 23, 1998, pursuant to the directive of McEntee, pending a hearing on the charges. He continued to serve as president of Local 375 until his subsequent suspension by the

AFSCME Judicial Panel in connection with the decision in JPC 00–13.

In late 1999, Lee Saunders, the Administrator of DC 37 appointed by McEntee, announced that an election would be held among the Local 375 delegates to select a person from the local to serve as a representative Vice–President on the DC 37 Executive Board.

In early January 1999, Commer authorized the mailing of a postcard by Local 375 to Local 375 members which stated as follows:

> Notice to Local 375 members, nominations and election for Local 375 vice president to DC 37 Executive Board will be on January 19, 2000. Only Local 375 delegates to DC 37 vote. Members should communicate their preferences for office of vice president to the following Local 375 DC delegates . . . [listing delegates] . . . Messages can be left at the local union office (212) 815–1375.

The postcard was distributed in the name of Local 375 and the cost of the mailing was paid by the local.

Article XIX, Section 3 of the Local 375 Constitution provides that "No literature shall be distributed in the name of the Guild or a chapter, unless authorized by the appropriate body." In JPC 98–111, the AFSCME Judicial Panel held that the appropriate bodies referred to in Article XIX, Section 3 of the Local 375 Constitution are the local's Executive Committee or the delegate body.

Commer did not notify or seek the approval of any official body of the local to mail the postcard and the mailing was not approved by any such body. Commer acknowledged in the proceedings before the Judicial Panel that he had not sought nor

---

4. Generally, an evidentiary hearing is required on a motion for a preliminary injunction. See *Drywall Tapers and Pointers of Greater New York, Local 1974 v. Local 530*, 954 F.2d 69, 76–77 (2d Cir.1992) (*citing Fengler v. Numismatic Americana, Inc.*, 832 F.2d 745, 747–48 (2d Cir.1987)). Although the right to a hearing can be waived, *see Fengler*, 832 F.2d at 747, application of the waiver

rule would be inappropriate here because Commer is *pro se*. However, a hearing is not required where the essential facts are undisputed and resolution of those disputes which do exist will not affect a plaintiff's entitlement to relief. *See Drywall Tapers & Pointers*, 954 F.2d at 76–77 (citation omitted); *Brown v. Giuliani*, 158 F.R.D. 251, 254 (E.D.N.Y.1994). This is such a case.

obtained the authorization of any appropriate body but argued that it would have been fruitless for him to approach the Executive Committee because he could not have gotten such authorization.

Commer's appeal in JPC 98–111 included a contention that the penalty in that case, i.e., the restitution order, should not be applied until all appeal avenues were exhausted, citing the AFSCME International Constitution, Article X, Section 16.[5] In a letter dated January 13, 2000, and which Commer does not deny having received in January 2000, the AFSCME International Secretary–Treasurer, William Lucy, notified Commer that the position of AFSCME was that Article X, Section 16 did not apply to the decision in JPC 98–111, and that per Article X, Section 22, the decision in JPC 98–111 would remain in full force and effect unless and until it was reversed by the International Convention.[6] The International Convention affirmed the decision in JPC 98–111.

As of the date of the hearing in JPC 00–13, April 13, 2000, Commer had not made any payments towards the restitution ordered by the Judicial Panel in JPC 98–111. Commer had spoken to the Local 375 Treasurer and offered to make restitution in the form of a bi-weekly $100.00 payroll deduction. The Treasurer was not among the charging parties in JPC 98–111. Commer did not approach the charging parties in JPC 98–111 to negotiate a payment plan nor did he cause any deductions to be taken from his pay.

Effective December 13, 1999, the last group of private sector employees represented by Local 375 disaffiliated from the local. Since that date, Local 375 has represented only public sector employees.

## II. *Conclusions Of Law*

■ The standard for granting a preliminary injunction in this circuit is "(1) a showing of irreparable injury and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and the balance of hardships tipping in favor of the movant." *Civic Ass'n of the Deaf v. Giuliani,* 915 F.Supp. 622, 631 (S.D.N.Y.1996) (*citing Blum v. Schlegel,* 18 F.3d 1005, 1010 (2d Cir.1994)); *see also Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.,* 111 F.3d 993, 998–99 (2d Cir.1997).

### A. *Irreparable Injury*

The Defendants contend that an inability to hold union office or to run as a candidate in the upcoming Local 375 election is not an irreparable injury within the meaning of Rule 65. Some district courts in this circuit have concluded that irreparable injury does not occur where a union member is barred from running for union office because the court can fashion a remedy at the conclusion of the litigation by voiding the existing election and ordering that it be re-run. *See Weiss v. Torpey,* 987 F.Supp. 212, 217 (E.D.N.Y.1997); *Bernard v. Local 100, Transport Workers Union of America,* 873 F.Supp. 824, 827 (S.D.N.Y.1995). However, there are courts in other circuits which have concluded otherwise. *See, e.g., Yager v. Carey,* No. 93 Civ.1970, 1993 WL 816627, at

---

**5.** Article X, Section 16 provides that if the AFSCME trial body or appellate body concludes that charges have not been brought in good faith or were actuated by malice, then "the trial body or the appellate body may impose such penalty on the charging party as in its judgment is deemed proper under the circumstances. In any case, the party against whom the penalty is imposed shall have the right to appeal ... and no such penalty shall take effect while an appeal of such penalty is pending."

**6.** Article X, Section 22 provides that "[d]ecisions of trial bodies at all levels shall be in full force and effect from the date of decision unless and until reversed or modified by an appellate body at a higher level; provided, however, that except in matters subject to Section 16 of this Article, any appellate body, upon receiving a notice of appeal, may order a delay in the carrying out of any penalty which has been assessed, pending its hearing and disposition of the appeal."

*11 (D.D.C. Nov. 16, 1993) ("Even if plaintiffs [who were suspended from union office and barred from seeking such office] ultimately regained their offices and electoral rights after a federal trial of the merits of their claims, no amount of trial-awarded damages could compensate them for the loss of their electoral rights pending trial.") (citing cases). The Defendants point to no decision by the Second Circuit Court of Appeals on this issue.

Although the Defendants concede that this Court would have the authority to order that the Local 375 elections be re-run in the event that Commer were ultimately to prevail on the merits, the proposition that barring a union member from running for elected office does not constitute irreparable injury is troubling. It is unnecessary to resolve this issue, however, because Commer's motion fails on the ground that he has not shown a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation. Therefore, for purposes of the instant motion it will be presumed without deciding that Commer has made a showing of irreparable injury.

**B. Likelihood of Success On The Merits**

**1. This Court Lacks LMRDA Jurisdiction As To The Officers Of Local 375**

■ The LMRDA does not apply to unions or members of unions consisting exclusively of public sector employees. *See Brock v. Southern Region, Region III of the Civil Service Employees Association, Inc.,* 808 F.2d 228, 231 n. 3 (2d Cir.1987); *Laboy v. Seabrook,* No. 96 Civ. 2359, 1996 WL 417523, at *3 (S.D.N.Y. July 25, 1996). This rule applies to union locals comprised only of public sector employees even where the "intermediate or international bodies with which they affiliate may be

[subject to the LMRDA]." 29 C.F.R. § 451.3(a)(4).

■ Commer's LMRDA § 101(a)(2) claim arises from a series of internal charges filed against him on January 11, 2000 and February 2, 2000 by Kutwal and other officers of Local 375. As of December 13, 1999, Local 375 has consisted only of public sector employees. Thus, the conduct which Commer alleges as the basis for his Section 101(a)(2) claim against the individual Local 375 defendants occurred at a time when they were not subject to jurisdiction under the LMRDA. Therefore, Commer has not shown a likelihood of success, or sufficiently serious questions going to the merits, as to these defendants.[7] *See Thompson v. McCombe,* 99 F.3d 352, 353 (9th Cir.1996) (dismissing LMRDA claim against union and two officers under LMRDA where union represented only public sector employees); *Laboy,* 1996 WL 417523, at *3 (dismissing LMRDA claim against union and its president where union represented only public sector employees).

**2. This Court Has LMRDA Jurisdiction As To The AFSCME And DC 37 Defendants**

Commer has also sued AFSCME International, DC 37, two officers of AFSCME (McEntee and Seferian), and an officer of DC 37 (Pepe).

A "mixed" union, i.e., a union that represents both government and private sector workers, is subject to the LMRDA. *See* 29 C.F.R. § 451.3(a)(4)(1999) ("[O]rganization[s] composed of both government locals and non-government or mixed locals, the parent organization as well as its mixed and non-government locals would be ... subject to the Act."); *Wildberger v. American Fed'n of Gov't Employees, AFL–CIO,* 86 F.3d 1188, 1192–93 (D.C.Cir.1996) (officer of local consisting solely of government

---

**7.** Commer has not named Local 375 itself as a defendant. However, a claim against the local would suffer from the same jurisdiction-al infirmity as do the claims against the individual Local 375 defendants.

employees did not lose protections of LMRDA as to claim that national union had denied officer's right to trial by unbiased tribunal).

The Defendants have not made allegations or submitted evidence as to whether AFSCME, which is the parent organization for all AFSCME locals, or DC 37, which is comprised of dozens of local unions, include mixed or non-government locals. Therefore, for purposes of the instant motion the Defendants are deemed to have admitted that AFSCME and DC 37 do include such locals. Therefore, both entities are subject to LMRDA jurisdiction.

The Defendants contend that whether or not AFSCME is a mixed union is irrelevant because Commer does not allege that the AFSCME Judicial Panel denied him due process in violation of LMRDA § 101(a)(5), 29 U.S.C. § 411(a)(5). However, while the case law certainly supports the proposition that a due process claim is one type of claim which may be brought against a parent organization, *see Wildberger*, 86 F.3d at 1193, it does not support the contention that this is the only type of claim that may be brought.

■ Under the LMRDA, a federal court has the power to intervene when the provisions of the union constitution and by-laws "are applied in such a way as to deprive union members of rights guaranteed by that Act." *Mayes v. Messercola*, No. 94 Civ. 0026, 2000 WL 1499340, at *4 (N.D.N.Y. Oct.4, 2000). Commer alleges that AFSCME violated his free speech rights under Section 101(a)(2) of the LMRDA when the Judicial Panel ordered that he be removed from office and barred from running for office. Essentially, Commer's allegation is that the Judicial Panel's decision in JPC 00–13 was an act of retaliation motivated by a desire to suppress Commer's on-going dissent and criticism of the union officialdom. This is an allegation that the disciplinary provisions of AFSCME's constitution and by-laws were applied by the panel in such a way as to deprive Commer of rights guaranteed by the LMRDA, namely, his free speech rights under Section 101(a)(2). Therefore, this Court has jurisdiction under Title I of the LMRDA over Commer's claims against AFSCME, McEntee, and Seferian.[8] In addition, although the submissions are less than clear as to the role allegedly played in these events by DC 37 and Pepe, those defendants are also subject to LMRDA jurisdiction.

■ The Defendants also contend that this Court lacks jurisdiction under Title I of the LMRDA because, according to them, Commer seeks relief as a union officer rather than as a union member. The LMRDA does not protect the rights of union officers as officers but, rather, only protects union members with respect to the rights associated with their union membership. *See Finnegan v. Leu*, 456 U.S. 431, 438, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982). The only exception to this doctrine is where a union officer can show that an action taken against him was part of a "purposeful and deliberate attempt ... to suppress dissent within the union." *Maddalone v. Local 17, United Bhd. of Carpenters and Joiners of America*, 152 F.3d 178, 184 (2d Cir.1998).

It is correct that the statutory rights afforded by LMRDA § 101 are accorded only to union members acting as members and to their rights as members, and not to union officers acting solely in their official capacity as officers and seeking to vindicate their rights as officers. *See Finnegan*, 456 U.S. at 438, 102 S.Ct. 1867; *U.S.*

---

**8.** It is also noted that the decision in JPC 00–13 bars Commer from running for office "at any level in the union" for a two-year period. The fact that Commer is barred from seeking office not only within Local 375 but also within DC 37 or higher up within AFSCME is further grounds for concluding that jurisdiction is proper as to his claims against AFSCME and DC 37 insofar as he alleges a violation of his rights under the LMRDA by those entities and their officers.

v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL–CIO, 156 F.3d 354, 361 (2d Cir.1998) (citing Finnegan, 456 U.S. at 438, 102 S.Ct. 1867). It is also correct that there is a narrow exception to this rule where the officer can demonstrate a purposeful and deliberate attempt to suppress dissent within the union, and that the standard for meeting that exception is quite high. See Maddalone, 152 F.3d at 184 (union officer challenging removal from appointed office must show by clear and convincing evidence that dismissal was "part of a series of oppressive acts by the union leadership that directly threaten the freedom of members to speak out") (citations omitted).

■ The Defendants misstate the law, however, in two respects. First, the Second Circuit has held that "rendering a man ineligible from seeking union office ... affects him as a member," rather than as a union officer. See Teamsters, 156 F.3d at 361 (citation and quotation marks omitted). Thus, there is jurisdiction under Title I of the LMRDA with respect to the Judicial Panel's decision to bar Commer from running for union office, and Commer does not have to meet the narrow exception described above. Second, the cases cited by the Defendants concern an officer challenging his removal from appointed office. See, e.g., Maddalone, 152 F.3d at 184 ("[T]he general rule is that status as a union employee or appointed officer is not a membership right within a union and is not protected by the LMRDA ....") (citation omitted). Here, of course, Commer was elected rather than appointed. Whether or not the exception applicable to officers' claims as officers' would apply in such a case is a different question.[9]

However, Commer's motion nonetheless fails because as explained below he has not made a sufficient showing as to the merits of his LMRDRA § 101(a)(2) claim even under the lower standard applicable to union members seeking to vindicate their rights as union members. Thus, he necessarily could not meet the higher standard applicable to union officers seeking to vindicate their rights as officers.

### 3. The Free Speech Claim

The LMRDA protects the free speech rights of union members as follows:

Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

LMRDA § 101(a)(2), 29 U.S.C. § 411(a)(2).

■ A union member who alleges that he has been retaliated against on the basis of protected speech must show that his conduct constituted "free speech" within the meaning of the LMRDA and that the speech was a cause for the union's action against him. See Hussein v. Hotel Employees & Restaurant Union, Local 6, 108 F.Supp.2d 360, 366 (S.D.N.Y.2000) (citing Black v. Ryder/P.I.E. Nationwide, Inc., 970 F.2d 1461, 1469 (6th Cir.1992)).

9. Indeed, it would appear somewhat anomalous that Commer would have to meet the "purposeful and deliberate attempt ... to suppress dissent" exception with respect to his claim that he was improperly removed from elective union office, but would not have to meet that exception with respect to his claim that he was improperly barred from seeking elective union office.

■ Commer contends that the decision in JPC 00–13 violated his free speech rights under Section 101(a)(2) because it was an act of politically-motivated retaliation for his ongoing dissent and criticism of certain policies and actions by other Local 375 officers, DC 37 and its officials, and AFSCME and its officials. The subjects of his criticism, according to Commer, including *inter alia* conduct concerning the financial management of those bodies and positions taken with respect to collective bargaining. It is presumed herein that Commer has continued to be a voice of dissent as in the past. However, he has not made a sufficient showing of merit as to his claim that the decision in JPC 00–13 constituted retaliation for acts of protected speech.

The charges filed against Commer in January and February of 1999, and the decision arising from those charges in JPC 00–13, concerned Commer's authorization of a mailing in the name of Local 375 without approval by an appropriate body and Commer's failure to comply with the decision in JPC 98–111 to make restitution to Local 375 for previous unauthorized mailings.

■ Commer contends that he was engaging in protected speech activity when he authorized the postcard to be sent, because the members were entitled to know of the upcoming nominations, and he was acting so as to promote membership participation and internal democracy within the union. Speech "incident to an imminent election … is among the type of speech most important to union democracy." *Commer v. Keller,* 64 F.Supp.2d 266, 274 (S.D.N.Y.1999) (citation omitted). The postcard constituted speech, contained information regarding upcoming elections, and was directed at other union members. *See Depperman v. Local 1199,* No. 91 Civ. 6696, 1994 WL 225434, at *5 (S.D.N.Y. May 25, 1994) (union member alleging speech-based retaliation must allege that speech "arose in the 'context of the union democratic process, i.e., political speech

primarily addressed to other union members'") (*quoting Helmer v. Briody,* 759 F.Supp. 170, 176 (S.D.N.Y.1991)). Thus, the content of the postcard itself was protected speech.

■ However, the fact that Commer had certain rights to engage in election-related speech does not mean that he had the right to authorize mailings in the name of Local 375 without approval and at the cost of the local. Under the language of Article XIX, Section 3, Commer did not have the authority to distribute literature in the name of the local without authorization by an appropriate body. That body, pursuant to the Local 375 Constitution and the decision in JPC 98–111, was either the local's Executive Committee or the delegate body.

Commer concedes that he did not seek or obtain authorization of an appropriate body as required by Article XIX, Section 3, but avers that it was illogical to require him to obtain such approval since the members of those bodies were among those persons whole alleged misdeeds he has been exposing and criticizing since his election in 1998. Commer raised this same defense to the Judicial Panel. The fact that the panel rejected that defense, which is insupportable under the language of the Local 375 Constitution, is not evidence that the panel's decision was politically motivated. Although the decision in JPC 00–13 discusses the content of the postcard and whether or not Commer's reasons for sending it had merit, in the end the panel defined the question at issue narrowly and without reference to the speech element of Commer's conduct. That is, the panel defined the issue as whether Commer had the power to unilaterally send out the postcard without approval from an appropriate body, and concluded that he did not.

Commer also contends that the Judicial Panel purposefully ignored another provision of the Local 375 Constitution, Article

XIV, Section 6.[10] Commer alleges that under this provision it was improper to penalize him for the mailing. Article XIV, Section 6, provides that:

> Except to the extent specified in this constitution, no officer of the local union shall have the power to act as agent for or otherwise bind the local union in any way whatsoever. No member of group of members or other person or persons shall have the power to act on behalf of or otherwise bind the local union except to the extent specifically authorized in writing by the president of the local or the board of delegates.

Commer's interpretation of this provision as authorizing him as local president to send out the mailing is dubious at best. In any case, as explained above, this Court does not have independent authority to enforce rights provided by a union's constitution and by-laws but, rather, may only intervene where those rules are being applied so as to contravene rights to which a union member is entitled under the LMRDA. There is no evidence that this provision was applied—or ignored—so as to contradict such rights. As stated earlier, Commer's free speech rights under the LMRDA do not entitle him to violate a provision of the union constitution regarding sending out mailings in the name of Local 375.

Finally, in fashioning its penalty the Judicial Panel concluded that there were aggravating circumstances with respect to the mailing charges because Commer had already been found guilty of and warned not to repeat such conduct in JPC 98–111. There is no dispute that the charges in JPC 00–13 were identical to those of which Commer had been found guilty in JPC 98–111. Thus, this aspect of the decision in JPC 00–13 is not evidence of retaliation for Commer's acts of free speech. Commer has not shown a likelihood of success or sufficiently serious questions going to the merits of this aspect of his claim.

Similarly, Commer has not made a sufficient showing with respect to his claim that the panel decision in JPC 00–13 relating to his failure to make restitution was directed at suppressing his free speech rights. First, the underlying conduct, i.e., Commer's failure to make restitution, is not related to speech. Nor does Commer challenge that he was obligated to make restitution pursuant to JPC 98–111. Second, although Commer alleges that he was punished because of his ongoing dissent within the union, he has shown no connection between the panel's decision and that speech activity. Rather, he relies on the generalized contention that, since his vociferous criticism necessarily would have created animus towards him with the AFSCME hierarchy, the discipline rendered against him must have been motivated by that animus.

Moreover, although Commer alleges that the charges and subsequent decision by the Judicial Panel in JPC 00–13 were politically motivated, he has not challenged the process by which the charges were heard or decided by the Trial Officer or the Judicial Panel. In other words, there is no due process claim under LMRDA § 101(a)(5).[11] Thus, this Court is not to look beyond the decision itself so long as there "some evidence" to support the charges. *International Bhd. of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers, AFL–CIO v. Hardeman*, 401 U.S. 233, 240, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971); *see Georgopoulos v. International Bhd. of Teamsters*, 942 F.Supp. 883, 895 (S.D.N.Y.1996).

10. Commer refers to this provision as Section 7. However, Article XIV contains no section 7, and section 6 contains the language referenced by Commer.

11. LMRDA § 101(a)(5), 29 U.S.C. § 411(a)(5), provides that "No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing."

It is undisputed that Commer failed to make restitution and that at least as of January 2000 he knew that the decision in JPC 98–111 ordering him to do so had not been stayed. Commer asserts that he should not have been penalized in JPC 00–13 because he offered to make restitution in the form of a bi-weekly $100.00 payroll deduction by speaking to the Local 375 Treasurer. However, there is substantially more than "some evidence" to support the charges given that he failed to make any offer of payment to the charging parties and failed to cause any payroll deduction to be made. Moreover, there is no evidence linking the Judicial Panel's decision to Commer's speech activities other than his generalized and speculative allegations that AFSCME and the members of the panel wanted to suppress his dissent.

Based on the foregoing, Commer has not shown either a likelihood of success or sufficiently serious questions on the merits of his claims under LMRDA § 101(a)(2) to warrant preliminary injunctive relief under Rule 65.

### Conclusion

Therefore, for the reasons set forth above, the motion for a preliminary injunction is denied.

It is so ordered.